PEOPLE HELPERS FOUNDATION,
INC., et al., Plaintiffs,

v.

The CITY OF RICHMOND,
et al., Defendants.

No. 91–682.

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 16, 1992.

Joseph William Kaestner, Thomas Bert Weidner, IV, Kaestner, Spieth & Gays, Richmond, Va., for plaintiffs.

George Timothy Oksman, Michele Anne Gillette, Office of City Atty., Richmond, Va., for defendant City of Richmond.

Herndon Philpott Jeffreys, Jr., Richmond, Va., and John Adrian Gibney, Jr., Shuford, Rubin, Gibney & Dunn, Richmond, Va., for defendants Joyce Riddell and William T. Riddell.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is before the Court on the defendants Joyce and William T. Riddell's Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons discussed below, this motion is denied.

## FACTUAL BACKGROUND

Plaintiff People Helpers Foundation, Inc. is a nonprofit Virginia corporation whose mission includes finding decent and affordable housing within neighborhood communities for individuals with mental and physical handicaps. In many instances, these individuals are black. In February of 1991, People Helpers rented apartments in and eventually purchased the building at 1207–09 West 47th Street in the City of Richmond (the "Building"). Subsequently, People. Helpers moved a number of handicapped individuals into the Building as tenants.

The defendants, Joyce Riddell and William T. Riddell (collectively, the "Riddells"),

live directly across the street from the Building. The Riddells also own other rental property in the immediate area. The Complaint alleges that the Riddells have made statements and committed acts designed to frighten or intimidate the Plaintiffs and thereby stop them from continuing to house their clients in the neighborhood, especially their black clients. (Complaint Para. 19.) For instance, Mr. Riddell asked Robert Elam, the chief operating officer of People Helpers and one of the Plaintiffs in this action, why People Helpers could not find any "white people" to put in the Building. Mr. Riddell also allegedly made another derogatory and sarcastic statement about blacks to Rebecca Thomas, another Plaintiff and a People Helpers volunteer. *Id.*

The Complaint further alleges that Mrs. Riddell also took actions designed to intimidate People Helpers and to cause them to look elsewhere for housing their clients. Specifically, in June of 1991, Rebecca Thomas and Gary Thomas delivered mattresses and other furnishings to the apartments leased by People Helpers in the Building. When Mrs. Riddell noticed the furniture being moved into the Building, she went to the front door of many of her neighbors and then summoned them outside. She then allegedly gathered these neighbors in an intimidating and threatening manner in her front yard, directly across the street from the Building, while the People Helpers volunteers unloaded the apartment furnishings. (Complaint Para. 18.) In addition, Mrs. Riddell has on numerous occasions throughout the summer and fall of 1991, stood in her yard taking pictures of People Helpers' clients and staff. (Complaint Para. 20.) All of these actions, claim the Plaintiffs, were intended to create an atmosphere of intimidation and fear and to cause People Helpers to locate its clients in a different neighborhood.

In addition, the Plaintiffs claim that on October 24, 1991, the Richmond Bureau of Police made a decision that they would not allow People Helpers to continue to use the Building despite the fact that there were no actual violations of the Building Code, Zoning Ordinance, or any other state or local law. The reason given by the Police for its decision was that the *neighbors* did not like the "type" of people living in the Building. (Complaint Para. 30 (emphasis added).) The Bureau of Police further stated that the *neighbors* were "intolerant of the People Helpers' Clients living in the Building, would not condone them much longer, and that Plaintiff Robert Elam's only reasonable course of action would be to evict People Helpers' Clients from the Building, and refrain from leasing to any people with mental and physical disabilities." (Complaint Para. 31 (emphasis added).)

Based upon these allegations, the Plaintiffs contend that the Riddells violated their right to provide housing to blacks and disabled people free from intimidation, interference, and coercion pursuant to 42 U.S.C. § 3617 and Virginia Code § 36–96.5. They seek damages, permanent injunctive relief, and a declaratory judgment against the Riddells and the City of Richmond.

## THE MOTION TO DISMISS

The Riddells argue that the facts outlined above simply do not add up to anything illegal. The defendants maintain that the Complaint does not suggest any facts that show the Riddells' actions were motivated by animus towards disabled people, a protected class under the Fair Housing Act. Furthermore, the Riddells make the unsupported assertion that Plaintiffs have no standing to raise a claim of racial animus. Rather, the Riddells maintain that the Complaint only shows that they had fears about possible drug use and building code violations occurring in their neighborhood. (Complaint Para. 32.) Mr. Riddell also communicated his legitimate concerns about possible parking problems, and Mrs. Riddell complained to their councilman that the Building had too many residents. (Complaint Paras. 17, 19.)

Even assuming that they disliked handicapped people, the Riddells argue that their actions fall far short of anything designed to intimidate or force people out of their neighborhood. They did not approach anyone with threats, they did not damage any-

one's property, they did not send hate mail, and they did not make a display of force. In other words, the facts alleged in the Complaint, according to the Riddells, do not reach the level of intimidation or coercion contemplated by § 3617. Instead, the Riddells state that all they did is observe and document all that had happened and discuss possible violations of the law with public officials.

It is clear that the Riddells did not roll out the welcome wagon when People Helpers started integrating black disabled tenants into their neighborhood. It is less certain, however, that the Riddells' conduct was such as would constitute a violation of 42 U.S.C. § 3617. This, then, is the primary question before the Court, and it is an issue of first impression.

The Federal Fair Housing Act of 1968 (the "Act"), was established by Congress to insure that people who have historically suffered from discrimination in the housing markets would have an equal opportunity to housing. Although most of the legislation is designed to prevent illegal discrimination on the part of housing providers, one provision specifically prohibits unrelated third parties from interfering with anyone who is attempting to aid others protected under the Act from obtaining housing of their choice. 42 U.S.C. § 3617 states:

> It shall be unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted under or protected by §§ 3603, 3604, 3605 or 3606 of this Title.

This provision is part of a broad legislative plan to eliminate all traces of discrimination within the housing field.

The Fair Housing Act is "broad and inclusive" in protecting against conduct which interferes with fair housing rights and is subject to "generous construction." *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 209, 212, 93 S.Ct. 364, 368, 34 L.Ed.2d 415 (1972). Although there have not been many cases addressing § 3617, it is clear that this provision "protects persons who aid or encourage others in securing rights to equal housing opportunities and conditions by making it unlawful to coerce, intimidate, threaten or interfere with them because of their aid or encouragement." *Meadows v. Edgewood Management Corp.*, 432 F.Supp. 334, 335 (W.D.Va.1977); *see also, Smith v. Stechel*, 510 F.2d 1162, 1164 (9th Cir.1975) (holding that § 3617 deals with situations where housing rights have actually been respected by persons who suffer consequent retaliation and with situations in which the fundamental inequity of a discriminatory housing practice is compounded by coercion, intimidation, threat, or interference).

■ In order to make out a violation of § 3617, Plaintiffs must satisfy four elements. First, they must show that the residents of the Building are protected classes under the Fair Housing Act. Next, People Helpers must prove, by a preponderance of the evidence, that they actually aided or encouraged the protected individual or group in the exercise or enjoyment of rights under 42 U.S.C. § 3604 to equal services and conditions of housing. *See, Meadows*, 432 F.Supp. at 335.

The third factor necessary for Plaintiffs to succeed on their claim is that they must prove either intentional discrimination or discriminatory impact. *Oxford House–Evergreen v. City of Plainfield*, 769 F.Supp. 1329, 1343 (D.N.J.1991); *see also, Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo*, 752 F.Supp. 1152, 1168 (D.P.R.1990) (under Fair Housing Act plaintiff must show discrimination was in some part the basis for the action, but does not need to show that discrimination was the sole motivating factor). This demands the Court to engage in a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.

Finally, under § 3617, Plaintiffs must show coercion, intimidation, threat, or interference on account of their having aided or encouraged the exercise of the residents' right to live in the neighborhood of their choice. *Oxford*, 769 F.Supp. at 1344.

The first and second factors of this test are not in dispute. People Helpers clearly aided handicapped and black individuals in securing access to housing. Both blacks and handicapped persons are protected classes under the Fair Housing Act. 42 U.S.C. § 3604(a), (b), and (f)(1).

The third factor, discriminatory intent, may also be able to be proven at trial. The Complaint alleges that Mr. Riddell asked Mr. Elam, the director of People Helpers, why he could not find any "white people" to put into the Building, and he also made a derogatory and threatening statement about blacks to Plaintiff Rebecca Thomas. (Complaint Paras. 19, 33.) The Riddells also apparently expressed dissatisfaction to Lieutenant Carlson of the Richmond Police with the "type" of people that were living in the Building. These comments indicate that discrimination or racial animus was a motivating factor in the Riddells' actions towards to People Helpers. The legitimate motivations claimed by the defendants— fear of parking problems and drug activity—may prove to be a pretext for the underlying discrimination. *See, Casa Marie*, 752 F.Supp. at 1169 (finding defendants' professed desire to stop the development of businesses in the community a pretext).

As stated above, the last factor, whether interference or intimidation sufficient to establish a violation of § 3617 can be shown, is the primary issue before the Court. It is clear that most of the cases involving violations of § 3617 entail conduct much more egregious than that which occurred in this case. For instance, in *Sofarelli v. Pinellas County*, 931 F.2d 718, 722 (11th Cir.1991), the complaint alleged that the plaintiff's neighbors committed certain actions—leaving a note threatening "to break [plaintiff] in half" if he did not get out of the neighborhood and running up to one of the plaintiff's trucks, hitting it, shouting obscenities and spitting at plaintiff—which would constitute intimidation and coercion under § 3617. *See also, Stackhouse v. DeSitter*, 620 F.Supp. 208, 211 (D.C.Ill.1985) (firebombing minority plaintiff's car in order to drive him away from the previously all-white neighborhood is conduct squarely within the range of actions prohibited by § 3617).

However, not all violations of § 3617 involve violence or threats of violent action. For example, in *Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo*, 752 F.Supp. 1152 (D.P.R.1990), the district court held that the filing by neighbors of an action seeking to permanently enjoin the renovation and the use of Casa Marie as a home for the handicapped elderly was an improper use of the local judicial system to exclude a protected class under the Act. Because this action was based on discriminatory intent and resulted in a disparate impact, the court found that plaintiffs had established a violation of § 3617.

> [T]he type of relief requested by plaintiffs is simply to be free of neighborhood interference as they provide residence for the elderly handicapped. Plaintiffs are not asking assistance from this court to compel any governmental agency to remove legitimate obstacles to licensing.

*Id.* at 1169.

In the instant case, there have been no allegations that the Riddells used force or threat of force to intimidate the Plaintiffs. And certainly, the defendants' behavior does not rise up to the level of coercion such as that described in *Sofarelli* or *Stackhouse*. But as in *Casa Marie*, even if the acts of the Riddells were not violent or illegal per se, they may still have constituted interference, intimidation, or coercion under § 3617. In addition to the derogatory remarks about the black residents, the Riddells are alleged to have organized their neighbors in front of the Building in order to threaten and intimidate the People Helpers volunteers. (Complaint Para. 18.) Of course, more facts need to be developed in order to enable the trier of fact to characterize this gathering either as one resembling an outdoor tea party or as a congregation more akin to a lynch mob.

On many other occasions, the Riddells have photographed both the occupants of the Building and the volunteers in what is labeled, an intimidating manner. (Complaint Para. 20.) Finally, the Complaint

alleges that indirect threats were communicated to Plaintiffs through the Richmond Bureau of Police. (Complaint Para. 20.) The Riddells are alleged to have done all these things in order to send the clear message to People Helpers that their organization and their clients, especially the black residents of the Building, were not welcome in the neighborhood.

Whether the Riddells actually interfered with the Plaintiffs in some way is a question of fact. Neither the cases nor the legislative history of § 3617 attempt to define the minimum level of intimidation or coercion necessary to violate this statute. Therefore, the Court assumes that the words of the statute—"coerce, intimidate, threaten or interfere"—mean exactly what they say. The fact that the Riddells behavior is not as severe or egregious as some other cases under § 3617 does not mean that, as a matter of law, what these defendants did was not violative of this provision. Moreover, if the trier of fact considers that the acts of the Riddells constituted slight or de minimis interference, such a conclusion can be adequately reflected in an appropriate award of damages.

## CONCLUSION

In order to state a claim for which relief can be granted under 42 U.S.C. § 3617, the Plaintiffs must prove four elements: 1) that the occupants of the Building (the clients of People Helpers) were members of a protected class under the Act; 2) that People Helpers and its volunteers actually aided or encouraged the protected individual or group in the exercise or enjoyment of rights to equal services and conditions of housing; 3) that the defendants were motivated at least in part by an intent to discriminate; and 4) that interference or intimidation sufficient to establish a violation of § 3617 occurred. Viewing the allegations in the Complaint in the light most favorable to the nonmoving party, the Plaintiffs have stated a proper claim under § 3617 and, therefore, the Riddells' Motion to Dismiss is denied.