UNITED STATES of America, Plaintiff,

v.

MIDWEST SUSPENSION AND BRAKE, Defendant.

No. 91–CV–70141–DT.

United States District Court,
E.D. Michigan, S.D.

Aug. 17, 1992.

Peter E. Jaffe, Trial Atty., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Thomas J. Budzynski, Mt. Clemens, Mich., Asst. U.S. Atty., Elizabeth J. Larin, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This is a civil action for injunctive relief and civil penalties against defendant-Midwest Suspension and Brake (Midwest), pursuant to Section 113 of the Clean Air Act (the Act), 42 U.S.C. § 7413, for violations of § 112 of the Act, 42 U.S.C. § 7412 and the National Emission Standards for Hazardous Air Pollutants for Asbestos, 40 C.F.R. Part 61, Subpart M (the Asbestos NESHAP), both of which govern the emission of asbestos.

This matter is before the Court on plaintiff-government's (the government) motion for summary judgment. Midwest filed a response brief, to which the government replied. Pursuant to E.D.Mich. Local R. 7.1(e)(2), the Court orders that the motion be submitted and determined on the briefs, without oral argument. For all of the reasons stated below, the government's motion is granted.

## I. STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1985); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v. Providence Hosp.*, 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

## II. FACTS

The government has alleged violations by Midwest of an Administrative Order (AO) issued by the Environmental Protection Agency (EPA) pursuant to § 113(a)(3) of the Act, 42 U.S.C. § 7413(a)(3). This action is based on alleged violations of the waste handling requirements specified in the AO and in the Asbestos NESHAP that occurred at Midwest's place of business, which is located at 3411 West Fort Street, Detroit, Michigan.

Midwest is engaged in the business of supplying parts for heavy duty truck suspensions, steering systems, and brakes. It performs two operations involving brake systems. The first includes the purchase and assembly of component parts into brake shoes. The second, which is the subject of this case, involves the collection and rehabilitation of used brake shoes for resale. During the rehabilitation process, brake shoes are disassembled and parts are discarded. Some brake shoes are "delined" in the rehabilitation process, a procedure performed by removing rivets that hold the brake lining to the brake table, and then cleaning, sandblasting, painting, and relining the table with a new brake block. Old brake blocks and rivets are discarded.

During an EPA inspection of the Midwest facility, numerous emissions of asbestos were documented. Midwest employees engaged in activities causing the release of asbestos. The releases occurred during waste disposal activities. The shop floor also yielded detectable amounts of asbestos.

As a result, EPA issued a "finding of violation." EPA informed Midwest that it (Midwest) violated the no visible emission requirement of the Asbestos NESHAP, 40 C.F.R. § 61.152(b). To resolve the matter, Midwest agreed to the issuance of an Administrative Order (the "AO" referenced above). The AO required that Midwest comply with the Act and the Asbestos NESHAP, including the no visible emission requirement of 40 C.F.R. § 61.152(b).

As a preventive measure, the AO specified waste management requirements for Midwest operations. The waste handling measures included requirements that delining wastes fall into a sturdy cardboard box, instead of falling to the ground, that the box be securely closed and wrapped so that it would not leak when discarded, and that the box bear a warning label. The AO also required that the floor of the delining area be vacuumed, not swept, and that the vacuum residue be tightly sealed before disposal. Last, the AO required that asbestos waste be segregated and separately disposed of, without compacting, at a landfill.

Subsequent EPA inspections of the Midwest facility uncovered numerous violations of the AO. Asbestos wastes were being compacted, resulting in visible emissions. Vacuum residue was not tightly sealed, and boxes of delining waste were improperly taped, resulting in visible emissions during landfill disposal. EPA testing verified that the emissions were in fact asbestos.

The Wayne County Health Department also inspected the Midwest facility in order to check compliance with the AO. Its inspection likewise revealed numerous violations of the AO. Rivets and linings were dropped on the shop floor, constituting violations of both the Asbestos NESHAP regulations and the AO. The shop floor was broom cleaned, and boxes of asbestos waste were not labelled and were not packaged properly. The Health Department notified Midwest of the violations, and Midwest indicated in response by letter that it was taking actions to correct the deficiencies.

Similar violations were noted during subsequent inspections, and efforts were made to have Midwest comply with applicable laws and regulations and AO requirements. Those efforts failed, and the government filed this lawsuit.

## III. DISCUSSION

In an effort to protect the Nation's air, Section 112 of the Clean Air Act, 42 U.S.C. § 7412, authorizes the Administrator of the EPA to publish a list of "hazardous air pollutants" and to prescribe emission standards for hazardous pollutants in the form of National Emission Standards for Hazardous Air Pollutants (NESHAP).

Asbestos is a hazardous air pollutant. 36 Fed.Reg. 5931. In 1973, the NESHAP for asbestos was established and is currently set forth at 40 C.F.R. Part 61, Subpart M. The emission standard for asbestos is prescribed by Section 112(c)(1)(B) of the Act, 42 U.S.C. § 7412(c)(1)(B), which provides in part that

> [N]o air pollutant to which a [NESHAP] standard applies may be emitted in violation of such standard. The Act establishes liability for the violation of a NESHAP. The language of the Act indicates that liability is strict.

■ The standards for controlling emissions of asbestos at fabricating operations, like Midwest's, are expressed in the Asbestos NESHAP in the form of practice requirements. Absent specific air cleaning practices, the Asbestos NESHAP prohibits (1) any discharge of visible emissions to the outside air, and (2) any owner or operator of a fabricating operation from discharging visible emissions during the collecting, processing, packaging, transporting, or depositing of any asbestos-containing waste material generated by fabrication operations.

■ Enforcement of the Asbestos NESHAP is achieved via Section 112(c) of the Act, 42 U.S.C. § 7412(c). Section 112(c) prohibits any stationary source from emitting any air pollutant in violation of any NESHAP. Thus, a violation of a NESHAP is a violation of the Act. In the same way, a violation of an EPA order is a violation of

the Act. Section 113(b) of the Act, 42 U.S.C. § 7413(b).

 Thus, to establish liability under the Act for the violation of a NESHAP or EPA administrative order, the government must prove that (1) the defendant is bound by the Asbestos NESHAP and the Act, and that (2) the defendant did not comply with their provisions. Midwest has failed to rebut the government's proof of these two elements.

To establish the first element of its case (i.e., that the Asbestos NESHAP and the Act apply to Midwest), the government must show that Midwest is (1) an owner or operator of (2) a fabricating operation using commercial asbestos in the fabrication of friction products, and the (3) Midwest does not *primarily* install such friction material in motor vehicles. 40 C.F.R. §§ 61.149 and 61.152.

The government has submitted overwhelming evidence in its effort to prove the first element of its case. The government's references and attachments—pleadings, deposition testimony, affidavits, exhibits, etc.—attached to its motion for summary judgment establish that Midwest indeed owned and operated a fabricating operation within the meaning of 40 C.F.R. §§ 61.149 and 61.152. Additionally, Midwest admitted in its answer that does not primarily install friction material in motor vehicles. This latter point is also supported by substantial deposition testimony.

The government also cogently proves the existence of the second element of its case: that Midwest did not comply with the Act, the Asbestos NESHAP, and the EPA Administrative Order. The record is clear on this point.

Midwest attempts to defeat the government's motion by contradicting previous admissions with affidavits. It is well established that a party cannot create a genuine issue of material fact by submitting an affidavit containing conclusory allegations that contradict prior admissions, deposition testimony, or otherwise sworn testimony. *Jones v. General Motors Corp.*, 939 F.2d 380, 385 (6th Cir.1991); *Reid v. Sears Roebuck & Co.* 790 F.2d 453, 460 (6th Cir.1986); *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir.1984). Midwest has simply failed to rebut the government's proofs, and its legal arguments (regarding "definitional" and "evidentiary" issues and "congressional intent") are untenable.

## IV. CONCLUSION

For all of the aforementioned reasons, the Court concludes that no genuine issues of material fact exist and that the government is entitled to judgment as a matter of law. The government is ordered to submit a proposed judgment within 10 days of the issuance of this opinion and order.

IT IS SO ORDERED.