UNITED STATES of America, Plaintiff,

v.

MIDWEST SUSPENSION AND BRAKE, Defendant.

No. 91–CV–70141–DT.

United States District Court, E.D. Michigan, S.D.

Nov. 13, 1992.

Peter E. Jaffee, Environmental Enforcement Section, Environmental & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Thomas J. Budzynski, Clinton Tp., Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This matter is before the Court on defendant Midwest Suspension and Brake's ("Midwest") motion for reconsideration of the Court's Memorandum Opinion and Order dated August 17, 1992 in which the Court granted summary judgment in favor of plaintiff United States of America ("the government") as to the issue of Midwest's liability in the case at bar 796 F.Supp. 260. Pursuant to E.D.Mich. LR 7.1(h)(2), the Court ordered the government to file a response brief. The matter is now ripe for a decision on the merits and pursuant to E.D.Mich. LR 7.1(h)(2) the Court will not entertain oral arguments on Midwest's motion for reconsideration. For the reasons which follow Midwest's motion for reconsideration is GRANTED.

## I. BACKGROUND

In the Court's August 17, 1992 Memorandum Opinion and Order, the Court held that there was no genuine issue of material fact regarding whether the Clean Air Act, 42 U.S.C. §§ 7401, *et seq.*,[1] and the National Emissions Standards for Hazardous Air Pollutants for Asbestos ("the asbestos NESHAP")[2] apply to Midwest. Specifically, the Court held the following: 1) Midwest is an "owner or operator" of a fabricating operation as defined in the asbestos NESHAP; 2) Midwest is a fabrication operation using commercial asbestos in the fabrication of friction products as defined in the asbestos NESHAP; and 3) Midwest does not primarily install such friction material on motor vehicles as defined in the asbestos NESHAP.

The Court also held that there was no genuine issue of material fact regarding the following violations by Midwest which the government alleged: 1) violation of the administrative order ("AO") by disposing of waste without proper packaging and labelling for the dates of June 12, 1987; June 29, 1988; and August 3, 1989; 2) violation of the asbestos NESHAP by releasing visible emissions during disposal for the dates of June 12, 1987 and October 13, 1989; 3) violation of the AO by failing to securely containerize delining waste for the dates of June 12, 1987 and October 13, 1989; 4)

---

**1.** The Clean Air Act was amended by the Clean Air Act Amendments of 1990, Pub.L. No. 101–549, 104 Stat. 2399. Unless otherwise indicted in the Memorandum Opinion and Order, all citations are to the Clean Air Act *prior* to the 1990 amendments.

**2.** The asbestos NESHAP are found in 40 C.F.R. Part 61, Subpart M and are issued pursuant to the Clean Air Act, 42 U.S.C. § 7401, *et seq.*

violation of the asbestos NESHAP and the AO by releasing visible emissions during removal of worn brake linings for the date of June 29, 1988; 5) violation of the AO by allowing removed linings to fall loose to the floor rather than directly into a sturdy cardboard box for the date of June 29, 1989; 6) violation of the AO by failing to ensure delining operations were conducted so waste falls directly into sturdy cardboard box for the dates of June 12, 1987 and August 3, 1989; and 7) violation of the AO when employee of Midwest cleaned brake relining area by sweeping the floor instead of vacuuming the floor for the date of June 29, 1988.

In its motion for reconsideration, Midwest raises the following issues. First, that there is a genuine issue of material fact regarding whether Midwest primarily installs friction material in motor vehicles under the asbestos NESHAP. Second, that there is a genuine issue of material fact regarding whether Midwest's rehabilitation of brake shoes comes within the meaning of "fabrication" under the asbestos NESHAP. Third, that the Court made a palpable error which was outcome-determinative when it held that Midwest's definitional arguments were untenable. Forth, that the Environmental Protection Agency's ("EPA") asbestos rulings may no longer by valid. Fifth, and finally, that there is no evidence of "compacting" at Midwest's facility. The Court will address each of these arguments separately.

## OPINION

### A. STANDARD OF REVIEW

Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted. The movant shall not only demonstrate a palpable defect by which the Court and the parties have been mislead but also show that a different disposition of the case must result from a correction thereof.

E.D.Mich. LR 7.1(h)(3).[3]

Midwest's first argument, that there is a genuine issue of material fact with respect to whether Midwest primarily installs friction material in motor vehicles under the asbestos NESHAP, is meritless. Paragraph 27 of the government's complaint states as follows:

The standards for fabricating commercial asbestos apply to Midwest pursuant to 40 C.F.R. § 61.149(a)(2), because Midwest does not primarily install asbestos friction materials on motor vehicles.

Midwest, in its amended answer to the government's complaint, stated in response to the allegation contained in Paragraph 27 of the complaint as follows:

Admit, but affirmatively state that they [Midwest] do install friction materials on motor vehicles.

In framing its response in such a manner, Midwest admitted this allegation as being true. "A failure to deny an allegation when a responsive pleading is required results in it being treated as admitted according to Rule 8(d). The theory of Rules 8(b) and 8(d) is that a defendant's pleading should apprise the opponent of the allegations in the complaint that stand admitted and will not be in issue at trial or those that are contested and will require proof to be established to enable plaintiff to prevail." C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d § 1261 at 382–83 (footnotes omitted). Accordingly, whether Midwest primarily installs friction materials on motor vehicles is not in issue anymore, because Midwest admitted that it does not primarily install friction materials on motor vehicles.

■ As to Midwest's contention that the work it does on brake shoes does not constitute "fabrication" as the term is defined

---

**3.** The Court notes, for the sake of completeness, that since Midwest is seeking a reconsideration of the Court's summary judgment ruling, that the motion for reconsideration is actually a motion to alter or amend judgment under Fed. R.Civ.P. 59(e), notwithstanding the fact that judgment has not yet been entered in this case. *See Smith v. Hudson,* 600 F.2d 60, 62 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

**1270**

in the asbestos NESHAP, the Court finds that there is a genuine issue of material fact regarding whether Midwest's rehabilitation of brake shoes constitutes fabrication under the asbestos NESHAP. 40 C.F.R. § 61.141 defines fabricating as follows:

> *Fabricating* means any processing of manufactured product that contains commercial asbestos, with the exception of processing at temporary sites for the construction or restoration of facilities.

The Court notes that the term "fabricating" is defined exactly as the term was defined when the EPA first issued regulations regarding fabrication of asbestos materials. National Emissions Standards for Hazardous Air Pollutants, 40 Fed.Reg. 48299 (1975) (originally codified at 40 C.F.R. Part 61, Subpart B). When the asbestos NESHAP were originally issued the EPA made the following statement: [4]

> Comments were received that the proposed definition of "fabricating" needed to be clarified. The Agency [EPA] reviewed the definition and determined that changes in the definition are not necessary. Fabricating includes any type of processing, excluding field fabrication, performed on manufactured products that contain commercial asbestos.

40 Fed.Reg. 48295 (1975).

In addition, the EPA made the following comment regarding the definition of manufacturing which is pertinent to the issue before the Court.

> The definition of "manufacturing" is added to clarify that the regulation [asbestos NESHAP] applies to only those sources within the specified categories of affected manufacturing facilities that process commercial asbestos into a product. *Operations which process (cut, shape, assemble, mix, or otherwise al-*

*ter) a manufactured product that contains commercial asbestos at a separate location are not intended to be covered by the regulation* [pertaining to manufacturing], *and are classified as fabricating rather than manufacturing operations. . . .*

39 Fed.Reg. 15397 (1974) (emphasis added).

As stated above, after reviewing the briefs, the exhibits attached thereto, and the Court file, the Court concludes that there is a genuine issue of material fact regarding whether Midwest's rehabilitation of brake shoes comes within the definition of fabricating under the asbestos NESHAP. Accordingly, at trial, the government will have the burden of proving that Midwest's rehabilitation of brake shoes constitutes fabrication under the asbestos NESHAP.[5]

■ As to the other "definitional" arguments, which Midwest raises, only one has merit. In issue is what constitutes a "visible emission." The asbestos NESHAP defines "visible emissions" as follows:

> *Visible emissions* means any emissions containing particulate asbestos material that are visually detectable without the aid of instruments. This does not include condensed uncombined water vapor.
>
> *Particulate asbestos material* means finely divided particles of asbestos material.

40 C.F.R. Part 61, Subpart M, § 61.141 (1990).

Upon reconsideration the Court finds that there is a genuine issue of material fact regarding whether visible emissions occurred in the case at bar. A plain reading of the definition of visible emissions reveals the following: the phrase "that are

---

**4.** Pursuant to the Administrative Procedures Act, before regulations are effective the various governmental agencies must publish proposed regulations in the Federal Register. 5 U.S.C. § 553. In addition to holding hearings on the proposed regulations, the agency solicits comments on the proposed regulations. The agency will then respond to these comments in the pages preceding the final regulations as they are appear in the Federal Register.

**5.** The Court notes that if the government fails to establish that Midwest's rehabilitation of brake shoes comes within the meaning of "fabricating" under the asbestos NESHAP, then Midwest cannot be held liable for any violation of the administrative order because the asbestos NESHAP would not apply to Midwest.

visually detectable without the aid of instruments" modifies the phrase "particulate [finely divided particles of] asbestos material." Under this reading, the particulate asbestos material must be visibly detectable without the aid of instruments. This reading of the asbestos NESHAP is further supported by the following comment which the EPA made when it amended the asbestos NESHAP in 1975:

The Agency acknowledges that some component processes of asbestos fabricating operations could generate visible emissions in such a manner that the visible emissions *do not contain asbestos* generated by the process, though the commentators did not cite any specific examples. The Agency has observed this type of process in asbestos manufacturing operations. For example, visible emissions of organic materials are sometimes generated during the curing of asbestos friction products in operations where asbestos is bound into a matrix of non-asbestos material *but the asbestos is not transferred into the emission stream. Such operations are in compliance with the standard of no visible emissions containing particulate asbestos material.*

40 Fed.Reg. 48295 (1975) (emphasis added).

This reading of the asbestos NESHAP is also consistent with the only other decision which has discussed the asbestos NESHAP and the "no visible emission" standard. In *United States v. Hugo Key and Son, Inc.,* 731 F.Supp. 1135 (D.R.I.1989), the district court made the following finding of fact:

15. On December 31, 1985, the boiler which had been lifted from building E by Hugo Key, was pushed or dragged along the ground with the Koehring backhoe causing *chunks of dry asbestos material* to be stripped from the boiler, strewn onto the ground and *emitted into the air.*

**6.** *Cf.* Definition of "adequately wetted" under the asbestos NESHAP which is defined in terms of preventing "dust" from being emitted. 40 C.F.R. Part 61, Subpart M, § 61.141 (1990).

**7.** The Court notes that Midwest has not challenged the validity of the Administrative Order

*Hugo Key,* 731 F.Supp. at 1139 (emphasis added).

Based upon this finding of fact, the court in *Hugo Key* went on to state that:

It is undisputed that the boilers were covered with friable asbestos material. Nor is it disputed that dry, friable asbestos insulation material fell to the ground from at least one of the boilers when it was removed from the building with a backhoe. Traces of asbestos remained on the ground until January 17, 1986. In addition, Hugo Key does not dispute that it did not take any precautions to contain the materials so exposed, *or to prevent release of asbestos fibers into the air.*

*Id.* at 1143 (emphasis added).

The *Hugo Key* court then went on to hold that "Hugo Key discharged visible emissions into the outside air during the handling of asbestos-containing waster material" in violation of 40 C.F.R. § 61.152(b) and Section 112(c) of the Clean Air Act, 42 U.S.C. § 7412(c). *Id.* at 1142. It is important to note that the court in *Hugo Key* specifically found that asbestos fibers were released into the air. Here the government's various affidavits state that "dust" was observed. This is insufficient under the "no visible emission" standard of 40 C.F.R. Part 61, Subpart M, §§ 61.149 and 61.152.[6] Accordingly, the government must prove that it visually observed asbestos material in the stream of emission without the aid of instruments.

In addition, the emission must be made in the air outside the building from which Midwest rehabilitates brake shoes. 40 C.F.R. Part 61, Subpart M, §§ 61.141, 61.-149(b)(1), 61.152(b) (1990). The Court finds that there is a genuine issue of material fact regarding whether visible emissions occurred in the air outside the Midwest's building for the alleged violations which follow: all alleged violations of the asbestos NESHAP which occurred on the date of June 29, 1988.[7] As to the other violations

which the EPA issued. Accordingly, the Court will treat the Administrative Order has being valid, assuming that the government can prove that the asbestos NESHAP apply to Midwest's rehabilitation of brake shoes.

**1272**

which the government seeks a judgment on, the Court finds that there is no genuine issue of material fact that the emission occurred in the air outside of Midwest's building, although there is still a genuine issue of material regarding whether these emissions come within the meaning of the asbestos NESHAP.

Midwest also questions the validity of the asbestos NESHAP based upon *Corrosion Proof Fittings v. EPA*, 947 F.2d 1201 (5th Cir.1991). However, *Corrosion Proof Fittings* relates to regulations issued under the Toxic Substance Control Act, and thus the holding in *Corrosion Proof Fittings* is irrelevant to the asbestos NESHAP in issue in the instant case. Finally, as to the issue of whether Midwest "compacted" asbestos materials, this issue also is irrelevant to the issue before the Court. The relevant issue before the Court is whether visible emissions occurred at Midwest's facility and not whether the emissions occurred as a result of "compacting" or any other operation.

### CONCLUSION

After reviewing the briefs which the parties have submitted, the exhibits attached thereto, the Court file, and the relevant law, the Court finds that there is a genuine issue of material fact regarding: 1) whether Midwest's rehabilitating of brake shoes constitutes fabricating under the asbestos NESHAP; 2) whether visible emissions, as defined in the asbestos NESHAP, occurred in the case at bar; and 3) whether the June 28, 1988 emissions occurred in the air outside of the building. Accordingly, Midwest's motion for reconsideration is GRANTED and the government's motion for summary judgment as to the issue of Midwest's liability under the Clean Air Act and the asbestos NESHAP is DENIED.

IT IS SO ORDERED.