**Xiangyuan (SUE) ZHU, Plaintiff,**

v.

**COUNTRYWIDE REALTY, COMPANY, INC., et al., Defendants.**

**No. CIV. A. 00–2290–KHV.**

United States District Court, D. Kansas.

May 29, 2001.

David S. Whinery, Lawrence, KS, Xiangyuan Sue Zhu, Topeka, KS, for plaintiff.

Thomas G. Lemon, Todd D. Powell, Fisher, Cavanaugh, Smith & Lemon, P.A., Topeka, KS, for defendants.

## MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

VRATIL, District Judge.

Xiangyuan (Sue) Zhu brings suit against Countrywide Realty, Company, Inc., Marc E. Bunting, Robert Thomas and Candace Thomas. She alleges that defendants made negligent and/or fraudulent representations during a residential real estate transaction and discriminated against her on the basis of sex and race in violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq., and 42 U.S.C. §§ 1982 and 1983. This matter comes before the Court on defendants' Motion To Strike Plaintiff's Amended Complaint, Or In The Alternative, Motion To Dismiss (Doc. # 27) filed December 7, 2000 and a number of procedural motions. After carefully considering the parties' arguments and authorities, the Court is ready to rule.

### Factual Background

In her amended complaint, plaintiff alleges the following facts: On June 12, 1998, plaintiff entered into an option contract to purchase a home from Countrywide Realty, Company, Inc. ("Countrywide"). Wittmer Farm Realty Company, Inc. ("Wittmer") listed the home. Plaintiff dealt with Marc E. Bunting, owner of Countrywide, Bunting Appraisal Services and Bunting Real Estate Services, as well as Robert Thomas and Candace Thomas, who worked for Countrywide. Plaintiff agreed to purchase the home "as is" if repairs listed in an inspection report did not exceed one per cent of the purchase price. The report revealed, however, that needed repairs exceeded that amount. On June 30, 1998, Bunting confronted plaintiff at her office and told her that she was still legally obligated to buy the home and that if she did not do so, he would sue her for $114,000 (the purchase price of the home plus $1,000). Plaintiff and her daughter met Bunting at the property the following

day. Plaintiff asked Bunting if the home had any other defects and Bunting again insisted that plaintiff purchase the property. He also told plaintiff that he would take care of the home for her, that she did not need to know anyone else in Topeka, and that she could trust him since he had been in the real estate business for 20 years and owned his own business. On July 2, 1998, Bunting agreed in writing that he would provide certain repairs to the home within eight days after the purchase. Plaintiff relied on Bunting's promise in deciding to buy the home, but Bunting did not complete the repairs by the agreed date.

In July of 1998, plaintiff visited the real estate office to inquire about her home repair and Candace Thomas told her that "[y]ou are good in getting a man." In August of 1998, when plaintiff again visited the real estate office to inquire about her home repair, Candace Thomas told her that "[y]ou are a Chinese" and that "[y]ou'd better find a Chinese man in town." On November 23, 1998, Bunting went to plaintiff's home at 9:45 a.m., supposedly to make repairs. Plaintiff was home due to a work holiday. Apparently Bunting did not make any repairs. Instead, he touched plaintiff's breasts, took off his shirt and asked her to go to bed. These actions made plaintiff fearful and Bunting yelled, "[w]hat are you scared for" and "[h]ave you ever seen a man's back before?" After Bunting and plaintiff had sex, he used her telephone without permission, and learned that a customer was waiting for him at his office to see a house. Upon learning this, he yelled at plaintiff in a gruff and intimidating voice that "[t]his is all your fault." Following this sexual encounter, Bunting would call plaintiff at work with questions about repairs and ask her to go home around 11:00 a.m. to show him the items which needed repair. When plaintiff would do so, however, Bunting would demand sex and not do repairs.

After sex, he would tell plaintiff that he would send someone over to do the repairs. On March 23, 1999, Bunting asked plaintiff to go home at 11:15 a.m. to show him a garage door that needed repair. After plaintiff wrote him a check for $625 to cover the materials, he demanded (and received) sexual favors from her.

On March 31, 1999, plaintiff called the real estate office and asked Candace Thomas if Bunting treated his other customers the way he treated her. Bunting called plaintiff back and yelled at her. He said that he was going to hand her over to his attorney and get a restraining order. Bunting still had a key to plaintiff's home, supposedly so he could repair it, and this worried plaintiff. Plaintiff left work and went to the real estate office to tell Candace Thomas that she wanted the key back and that she did not want Bunting close to her home. Candace Thomas replied that plaintiff and Bunting were not to have contact with each other, so everything should go through her. She also asked Bunting to deliver plaintiff's key to the real estate office, so plaintiff could pick it up. Bunting replied that he kept the key at home and that he would deliver it to plaintiff's house. Plaintiff did not want Bunting at her home, so she went home and called 911 to ask for a police officer to protect her when Bunting came over. When Bunting arrived, he said that Candace Thomas had put the restraining order on plaintiff and he told plaintiff in a gruff and intimidating voice that "no one was bigger in Topeka than he was."

At 10:00 a.m. on June 10, 1999, plaintiff discovered that Bunting had blocked her access to his telephone numbers at home and work. On June 14, 1999, Bunting called plaintiff during her lunch hour at work and asked her to met him at her house. When Bunting arrived at the house, he demanded (and again received)

sexual favors. He also told plaintiff that another person had requested the telephone blocks. Because of the repeated sexual encounters with Bunting, plaintiff was fearful about going to her house. In June of 1999, plaintiff talked with her daughter on the telephone every day and plaintiff's daughter said that she had a right to refuse Bunting's sexual demands.

On June 30, 1999, Bunting entered plaintiff's home at 6:45 a.m. and sexually assaulted her. On July 1, 1999, plaintiff asked Candace Thomas for the fax number of the real estate office, so that she could make a formal complaint. Thomas refused to give plaintiff the fax number, so plaintiff went to the real estate office to make a handwritten complaint. While plaintiff was at the office, Robert Thomas approached her in a physically threatening manner, yelled at her to leave immediately and never come to the office again, and told her that he would sue her, have the police arrest her and get her fired.

On July 2, 1999, plaintiff told an attorney at work about the sexual abuse which Bunting had inflicted on her. Following the attorney's advice, she went home and told police about the events. Eight months later, on April 28, 2000, plaintiff filed a complaint with the Department of Housing and Urban Development. Since May of 2000, defendants have retaliated against plaintiff, defamed her and intentionally inflicted emotional distress on her. Bunting informed his attorneys that plaintiff had stalked him and engaged in criminal trespass and telephone harassment for two years. In their answer to plaintiff's HUD complaint, defendants accused plaintiff of trying to harm and discredit Countrywide, Marc Bunting, Robert Thomas and Candace Thomas. Defendants filed a defamatory state court action against plaintiff, seeking a permanent restraining order. Plaintiff responded by filing two separate state court actions for permanent restraining orders against Bunting and Thomas G. Lemon, defense counsel. Defendants, but not plaintiff, received restraining orders. As a result of defendants' actions, plaintiff has suffered severe and grievous mental and emotional suffering, fright, anguish, shock, nervousness and anxiety. She continues to be fearful, anxious and nervous. Defendants' actions have forced plaintiff to obtain medical and psychiatric treatment that will continue for an indeterminable length of time.

## Procedural Background

Most motions which the Court will discuss in this order arise from the protracted and circuitous procedural history of this and related cases. Plaintiff's original complaint alleged that defendants discriminated against her on the basis of sex, race, national origin and familial status, and interfered with and intimidated her in exercising her right to housing in violation of 42 U.S.C. § 1982 and the Fair Housing Act, 42 U.S.C. § 3601 et seq. In addition, plaintiff alleged that defendants committed common law fraud and negligence and violated 42 U.S.C. § 1983. On July 20, 2000, defendants filed a motion to dismiss (Doc. # 4). Before the Court ruled on this motion, on October 30, 2000, plaintiff filed a Motion To Amend Complaint (Doc. # 15). The Court granted plaintiff's motion to amend and overruled defendants' motion to dismiss as moot. Plaintiff never served her amended complaint. See D. Kan. Rule 15.1(a) (2001). Defendants nonetheless filed a motion to strike or dismiss it and plaintiff responded with two motions to further amend.

The amended complaint, which is the operative complaint at this time, alleges four causes of action: (1) fraud and negligence regarding misrepresentations and nondisclosures made during the real estate transaction; (2) discrimination based on sex and race in violation of the Fair Housing Act of 1988, 42 U.S.C. §§ 3601 and

3604 through 3606; (3) sexual abuse and infliction of emotional distress in violation of 42 U.S.C § 1983; and (4) intentional infliction of emotional distress in violation of Section 818 of the Fair Housing Act of 1988, 42 U.S.C. §§ 1982 and 3617. As defendants, plaintiff named Countrywide, Bunting, Robert Thomas and Candace Thomas.[1]

On November 13, 2000, plaintiff attempted to disqualify defense counsel.

She now seeks leave to withdraw that motion.[2] Plaintiff also seeks leave to join new parties and amend her complaint a second time.[3] See Motion to Join Additional Parties Motion For Amended and Supplemental Pleadings (Doc. # 99) filed March 13, 2001. Defendants oppose both motions.[4]

Plaintiff also seeks to consolidate this case with three state court actions. See Motion To Consolidate (Doc. # 67) filed January 21, 2001.[5] Defendants respond

1. Plaintiff referred to the realty company as "Countrywide/Wittmer Farm Realty Company, Inc.", but it is unclear whether she meant to sue only Countrywide or if she also meant to add Wittmer as a separate defendant. Wittmer is an additional proposed defendant in plaintiff's motion to join. Because the Court sustains that aspect of plaintiff's motion to join, it need not puzzle over the intent of plaintiff's amended complaint.

2. Plaintiff alleged that defense counsel should be disqualified since their conduct has prompted her to sue them in both state and federal court and they have not complied with discovery requests in this case. Defendants claim that they should not be faulted because plaintiff sued them and they have fulfilled their discovery obligations to the best of their abilities. Plaintiff now seeks leave to withdraw the motion to disqualify. See Motion To Withdraw Plaintiff's Motion To Disqualify For Making Amendments (Doc. # 31) filed December 11, 2000. Defendants respond that plaintiff should not be allowed to withdraw her motion in order to amend it and re-file it at a later date.

3. Plaintiff first attempted to add new parties on November 17, 2000, by filing a Motion For Leave To Join Additional Parties To Her Amend[ed] Complaint (Doc. # 22). This motion sought to join Wittmer, the law firm of Fisher, Cavanaugh, Smith & Lemon P.A. and attorney Thomas G. Lemon. Plaintiff has also attempted to supplement her complaint on two occasions. See Supplement To Motion For Leave To Join Additional Parties In the Plaintiff's Amend[ed] Petition (Doc. # 48) filed January 2, 2001 and Supplement To The Petition (Doc. # 56) on January 11, 2001. Defendants oppose these filings as attempts to amend the complaint by circumventing the rules of civil procedure, and move to strike

them from the record. See Objection To Plaintiff's Supplement To Motion For Leave To Join Additional Parties In The Plaintiff's Amend (Sic) Petition (Doc. # 53) filed January 10, 2001 and Defendants' Second Objection To Plaintiff's Supplement To The Petition (Doc. # 61) filed January 16, 2001.

4. Plaintiff moves to strike as untimely defendants' proposed response to her motion to join additional parties. See Motion To Strike The Defendants' Motion To File Response To Plaintiff's Motion For Leave To Join Additional Parties In Her Amended Petition Out Of Time And The Defendants' Response To Plaintiff's Motion For Leave To Join Additional Parties In Her Amended Petition (Doc. # 45) on December 22, 2000. Defendants contend that their motion to strike or dismiss, filed December 7, 2000, serves as a response to plaintiff's motion to join additional parties, but that out of an abundance of caution they wish to obtain leave of the Court to file an untimely response to plaintiff's motion. See Motion For Leave To File Response To Plaintiff's Motion For Leave To Join Additional Parties In Her Amended Petition Out Of Time (Doc. # 4) filed December 19, 2000. Defendants' proposed response maintains that plaintiff has not provided sufficient or correct legal authority for her motion to join additional parties, that her motion is frivolous and that the proposed parties are not indispensable. Defendants also contend that the Court should overrule plaintiff's motion to join since her claims against two of the proposed additional parties have been dismissed in previous federal and state legal actions and plaintiff has turned this case into "an almost incomprehensible quagmire of legal pleadings."

5. The three state court cases are:

that this Court cannot consolidate the state court actions since those actions are not pending before it.

The parties have also had discovery disagreements. Plaintiff seeks the Court's intervention in the parties' dispute over the number of interrogatories which defendants served.[6] See Response To Defendant's Notice Of Discovery (Doc. # 50) filed January 6, 2001. Plaintiff also filed an unopposed Motion For Leave To File Witness List And Exhibit List One Day Out Of Time (Doc. # 42) on December 16, 2000, and a Motion For Reconsideration (Doc. # 89) on February 7, 2001 which the Court overrules as moot.

Defendants seek to transfer the trial to Topeka, contending that no good justification exists for hearing this matter in Kansas City, Kansas. See Motion For Determination Of Place Of Trial (Doc. # 108) filed April 3, 2001. Plaintiff objects to defendants' request. On December 7, 2000, defendants filed a Motion To Strike Plaintiff's Amended Complaint, Or In The Alternative, Motion To Dismiss (Doc. # 27) because they had not been properly served. They also allege that plaintiff's amended complaint does not state a claim under Fed.R.Civ.P. 12(b)(6).[7]

---

(1) *Bunting v. Zhu,* No. 00C–000579 (Kan. D.Ct. Nov. 1, 2000), available at *http://www.sh awneecourt/http://www.shawneecourt.org,/* http://www.shawneecourt.org, in which the state district court granted Bunting's motion for a permanent restraining order. On March 8, 2001, the Kansas Court of Appeals dismissed Zhu's appeal. See *Bunting v. Zhu,* No. 00–86190–A (Kan. Ct.App. Mar. 8, 2001).

(2) *Zhu v. Bunting,* No. 00C–000665 (Kan. D.Ct. Nov. 1, 2000), available at http://www.shawneecourt.org, in which the state district court denied plaintiff's petition for a permanent restraining order from Marc Bunting. On February 1, 2001, the Kansas Court of Appeals dismissed plaintiff's appeal on February 1, 2001. See *Zhu v. Bunting,* No. 00–86190 A (Kan.Ct.App. Feb. 1, 2001).

(3) *Zhu v. Lemon,* No. 00C–000714 (Kan. D.Ct. Aug. 2, 2000), available at http://www.shawneecourt.org, aff'd. on appeal, *Zhu v. Lemon,* No. 00–85883 A, 20 P.3d 98 (Kan.Ct.App. Apr. 17, 2001), in which the state district court denied plaintiff's petition for a permanent restraining order from Thomas G. Lemon.

6. Defendant served plaintiff with 28 interrogatories (not including subparts) instead the 25 allowed under the Federal Rules of Civil Procedure. Defendants amended the interrogatories which they sent to plaintiff and responded that they regretted any inconvenience which their error had caused. Plaintiff maintains that the Court should nonetheless sanction defendants by striking their interrogatories, insists that she should not be required to answer the interrogatories by the original deadline, and states that she will fill a motion to compel if defendants do not answer her interrogatories in a timely manner.

7. Specifically, defendants contend that (1) plaintiff has not alleged fraud with particularity; (2) plaintiff's FHA claim does not allege that defendants denied her the opportunity to rent property, that she was exercising rights protected by the FHA, or that defendants' engaged in discrimination on the basis of sex or race, (3) some of plaintiff's statutory cites do not provide a cause of action; (4) defendants are not state actors for the purposes of Section 1983; and (5) defendants' conduct does not rise to the level necessary for intentional infliction of emotional distress. Defendants insist that it would be inequitable to hold them liable on a complaint that makes no sense and does not inform them of what plaintiff is alleging.

Plaintiff filed her own Motion To Strike (Doc. # 29) on December 11, 2000 alleging that defendants did not timely file their motion to strike or dismiss. Defendants respond that plaintiff's failure to properly serve the amended complaint means that their motion to strike or dismiss is still timely. Plaintiff alleges that she did properly serve defendants, that defendants' motion did not comply with the Court's scheduling order, and that factual disputes make dismissal inappropriate in this case.

The Court first disposes of the pending procedural motions, then addresses defendants' motion to strike or dismiss.

## I. Plaintiff's Motion To Disqualify (Doc. # 18)

Plaintiff claims that the Court should disqualify defense counsel because their conduct prompted her to sue them in both state and federal court and they have failed to comply with discovery requests in this case. Defendants respond that they are not at fault, just because plaintiff sued them, and that they have properly withheld certain information in discovery.[8]

On December 11, 2000, plaintiff filed a motion to withdraw her motion to disqualify defense counsel. See Motion To Withdraw Plaintiff's Motion To Disqualify For Making Amendments (Doc. # 31). Plaintiff asserts that her accusations are valid but that she wishes to re-file the motion at a later date, with additional allegations. Defendants respond that plaintiff should not be allowed to withdraw her motion in order to amend and re-file it, since it will still be frivolous. The Court, however, cannot determine the merit of a future motion. It therefore sustains plaintiff's motion to withdraw.[9]

## II. Plaintiff's Supplements To Her Motion To Join Additional Parties (Doc. # 48) And Petition (Doc. # 56)

Plaintiff has filed two pleadings that are not titled motions to amend, but are in essence attempts to amend or supplement her complaint. See Supplement To Motion For Leave To Join Additional Parties In The Plaintiff's Amend[ed] Complaint (Doc. # 48) filed January 2, 2001; Amended Complaint (Doc. # 57) attached to Supplement To The Petition (Doc. # 56) filed January 11, 2001. Plaintiff has not sought leave to amend, however, under D. Kan. Rule 15.1(a). Defendants oppose any attempt to amend, arguing that plaintiff is attempting to circumvent the Federal Rules of Civil Procedure and D. Kan. Rule 15(a) by amending her amended complaint without permission.

---

8. In addition to the three state court cases discussed in note 4, plaintiff has filed two federal court cases in addition to this case. See *Zhu v. Fisher Cavanaugh*, Case No. 00–2329–KHV and *Zhu v. Countrywide Realty, Company, Inc. et al.*, Case No. 01–2067–KHV. Both of plaintiff's cases against defense counsel have been dismissed. See Zhu v. Fisher Cavanaugh, Case No. 00–2329, Order (Doc. # 4) filed September 25, 2000 and Order (Doc. # 16) filed February 7, 2001 (overruling motion for reconsideration of dismissal); *Zhu v. Lemon*, No. 85883, 20 P.3d 98 (Kan.Ct.App. Mar. 9, 2001) (dismissal affirmed).

As to discovery, plaintiff states that in this case, defense counsel did not provide information required in the parties' planning meeting or make required disclosures under Fed.R.Civ.P. 26(a)(1). Defense counsel state that they did not disclose their home addresses and telephone numbers because of the extensive and contentious litigation with plaintiff. They state that she knows how to contact them, and that if she wishes to get individual contact information, she should file a motion requesting permission to do that and not seek to disqualify counsel. As to Rule 26 disclosures, defendants state that this portion of plaintiff's motion is moot since they made the required disclosures on November 16, 2000.

9. Should plaintiff wish to re-file a motion to disqualify, the Court encourages her to consider Section III of this order and the application of that section to a motion to disqualify. Furthermore, plaintiff should note that "[t]he Court should not disqualify unless the offending attorney's conduct threatens to taint the underlying trial with a serious ethical violation." *Hall v. Martin*, No. 99–1092–KHV, 1999 WL 760213, at *3 (D.Kan. Aug. 20, 1999) (citing *Field v. Freedman*, 527 F.Supp. 935, 940 (D.Kan.1981) (quotations and other citations omitted)). To date, plaintiff's accusations fall significantly short of this standard.

Plaintiff argues that defendants' responses are untimely since any responses to her supplements were due at the time any response to her motion to amend her complaint was due, i.e. November 28, 2000. She also argues that she is entitled to join additional parties as a matter of law. On March 13, 2001, plaintiff filed her Motion For Amended and Supplemental Pleadings (Doc. # 99), which is identical to the supplements which she previously filed without leave and which the Court analyzes below. The Court therefore sustains defendants' objections to the pleadings filed without leave of Court, see D. Kan. Rule 15.1(b), and orders that plaintiff's Supplement To Motion For Leave To Join Additional Parties In The Plaintiff's Amend[ed] Complaint (Doc. # 48) and plaintiff's Amended Complaint (Doc. # 57) be stricken from the record.[10]

### III. Plaintiff's Motion For Leave To Join Additional Parties (Doc. # 22) And Motion To Amend (Doc. # 99)

Plaintiff seeks to amend her complaint to add additional claims and join her daughter as a plaintiff and join Wittmer, Fisher, Cavanaugh, Smith & Lemon (defense counsel), Thomas G. Lemon (an attorney with the Fisher Cavanaugh law firm) and Bunting Appraisal Services as defendants.[11] See Motion For Amended And Supplemental Pleadings (Doc. # 99) filed March 13, 2001 and Motion For Leave To Join Additional Parties To Her Amend[ed] Complaint (Doc. # 22) on November 17, 2000. Defendants contest both motions. Initially, however, the Court must decide whether it may consider defendants' response to plaintiff's motion to join, since plaintiff argues that it is untimely.

Plaintiff filed her motion to join on November 17, 2000. Defendants had until December 5, 2000 to respond.[12] Two

---

**10.** Even if plaintiff were merely attempting to supplement her prior pleadings, the Court disfavors supplements and applies the rules governing sur-replies in determining whether to consider them. See *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 659 (D.Kan.1999). Local court rules do not provide for sur-replies. See D. Kan. Rule 7.1 (2001). Leave to file a sur-reply is generally only granted in "rare circumstances," as where the movant "improperly raises new arguments in a reply." *Humphries v. Williams Natural Gas Co.*, No. 96–4196–SAC, 1998 WL 982903, at *1 (D.Kan. Sept. 23, 1998).

Plaintiff's pleadings, however, are clearly not supplements. Plaintiff's "supplement" to her motion to join additional parties does not actually address her motion to join those parties. It lists new parties and entirely new claims. Plaintiff's "supplement" to her petition cannot be considered anything but an attempt to amend her amended complaint. Plaintiff utilized Rule 15 of the Federal Rules of Civil Procedure to amend her complaint once as of right, before defendants filed a responsive pleading. Subsequent amendments are allowed only by leave of court or by written consent of the adverse parties. Fed.R.Civ.P. 15(a). Plaintiff did not present her amended com-

plaint with a motion for leave to amend and defendants did not consent to her amendment.

The Court understands that plaintiff is not an attorney but cautions her that she may not amend her pleadings without following the local rules and the Federal Rules for Civil Procedure. Even though pro se complaints are held to less stringent standards than pleadings drafted by lawyers, pro se litigants must follow the same procedural rules as other litigants. See *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980).

**11.** In her reply to defendants' response to her motion, but not in her actual motion, plaintiff mentions Bunting Appraisal Services as another defendant. Plaintiff does include Bunting Appraisal Services in her proposed second amended complaint.

**12.** Since this dispute arose in November and December of 2000, the applicable local rule was D. Kan. Rule 7.1(b), which allowed 10 days after service to file a response. The Court arrives at the December 5, 2000 due date by omitting weekends, the Thanksgiving holiday and adding three days for service by mail. Fed.R.Civ.P. 6(a) and (c).

weeks later, on December 19, 2000, defendants filed a Motion For Leave To File Response To Plaintiff's Motion For Leave To Join Additional Parties In Her Amended Petition Out Of Time (Doc. # 40). Defendants believed that their motion to strike or dismiss, filed on December 7, 2000, served as their response to plaintiff's motion to join additional parties. Out of an abundance of caution, however, they also decided to file a direct response to plaintiff's motion. Plaintiff asks the Court to deny defendants' motion to respond out of time. See Motion To Strike The Defendants' Motion For Leave To Join Additional Parties In Her Amended Petition Out Of Time And The Defendants' Response To Plaintiff's Motion For Leave To Join Additional Parties In Her Amended Petition (Doc. # 45) on December 22, 2000.

■ Under D. Kan. Rule 7.4, the failure to file a response within the time specified constitutes a waiver of the right to thereafter file such response, except upon a showing of excusable neglect. The Supreme Court analyzed the excusable neglect standard in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).[13] In determining whether the excusable neglect standard is met, courts should consider all relevant circumstances, including: "(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Id.* at 395.

Plaintiff opposes defendants' request to file a response, but she does not address the Pioneer factors. She does not argue that granting defendants' motion will be prejudicial, and in this case defendants' two week delay had no negative impact on the judicial process. See *Ledbetter v. Kan. Dep't Of Soc. And Rehab. Servs.*, No. 99–2261–KHV, 2000 WL 206208, at *3 (D.Kan. Jan.3, 2000) (one month delay not significant). Defendants apparently acted in good faith, believing that their previously filed motion to strike or dismiss eliminated any need for further response. Defendants cite the dismissal of *Zhu v. Fisher, Cavanaugh, Smith & Lemon, P.A.*, No. 00–2329–KHV, 2001 WL 306090 (D.Kan. Feb.7, 2001), another case which plaintiff brought against defense counsel, to support their belief that the Court would summarily dismiss plaintiff's motion to join additional parties. Defendants state that it is difficult to discern what relief plaintiff seeks in her various motions, and that it is therefore difficult to accurately calculate when their responses are due. In addition, defendants state that the frequency of plaintiff's filings, coupled with the approach of the holidays and other pending legal matters, prevented them from timely responding in a separate pleading.

■ The press of other legal matters does not generally constitute excusable neglect. See *Walls v. Int'l Paper Co.*, 192 F.R.D. 294, 296 (D.Kan.2000) (delay due to attorney's busy practice rarely constitutes excusable neglect). Plaintiff has made voluminous filings, however, in this and other cases. Defendants do not present a strong case as to their reasons for delay. Upon consideration of all factors, however, the Court finds that they have shown excusable neglect and therefore sustains their motion for leave to respond out of time to plaintiff's motion to join. See *Tufts v. Newmar*, No. 98–2265 KHV, 1999 WL

---

**13.** Although the Pioneer analysis was performed in the context of Fed. Bankr.P.R. 9006(b)(1), the Tenth Circuit has adopted it in other contexts as well. See *City of Chanute, Kansas v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir.1994); *White v. O'Dell Indus. Inc.*, No. 99–2315–JWL, 2000 WL 127267, at *1 (D.Kan. Jan.14, 2000).

203460, at \*3 (D.Kan. Apr.6, 1999) (lack of prejudice or impairment of efficient judicial administration and good faith of movant weigh strongly in favor of permitting tardy claim). The Court also overrules plaintiff's motion to strike defendants' response. The Court will therefore consider defendants' response to plaintiff's motion to join.

In her second amended complaint, plaintiff proposes to add the following factual allegations: After plaintiff purchased her home, she discovered that it had a broken water pipe, no air-conditioning or heating, a damaged garage door, a leaking water heater and dripping water. Defendants had not disclosed these defects and the defects rendered the home uninhabitable. Plaintiff spent $1,415.28 to repair the defects and estimates that she will have to spend an additional $2,714.32. When HUD sent defendants a letter regarding plaintiff's complaint, they formed a conspiracy to retaliate and maliciously prosecute plaintiff. Defendants designed this conspiracy to continue their discrimination against plaintiff and maximize their profits. On May 12, 2000, they sent plaintiff a threatening letter which accused her of engaging in a two-year practice of stalking, criminal trespass and telephone harassment. By sending plaintiff this letter, defendants attempted to cause her to withdraw her HUD complaint. On May 19, 2000, defendants responded to the HUD complaint with fraud and deception. This fraud and deception impaired plaintiff's complaint with HUD. On May 19, 2000, defendants filed a complaint which sought a permanent restraining order against plaintiff. Defendants filed suit for the sole purpose of malicious prosecution and made false allegations in their complaint. Defendants lied in their pleadings to the Shawnee County Court on November 13, 2000 for the purpose of influencing, intimidating or impeding Judge Franklin R. Theis. Defendants engaged in the racketeering activities of (1) mail fraud when they devised a scheme to obtain money from plaintiff by making false promises to her, (2) retaliation against a witness, victim or informant when they conspired to cause bodily injury to plaintiff and damage her professional reputation, and (3) obstruction of justice. Defendants undertook these actions for their personal gain and not while acting in their lawful roles with either the law firm or real estate company. On November 1, 2000, defendants tortured and humiliated plaintiff during the trial of one of her state court suits. Defending against these fabricated claims while working full time means that plaintiff does not have time for her child.

In addition to the defendants named in her amended complaint (Countrywide, Marc E. Bunting, Robert Thomas and Candace Thomas), plaintiff seeks to add Wittmer, the Fisher Cavanaugh law firm, Thomas G. Lemon and Bunting Appraisal Services. Plaintiff also seeks to add Ye Zhu as co-plaintiff. Plaintiff's amended complaint asserts claims of fraudulent and negligent misrepresentation, sex and race discrimination in violation of 42 U.S.C. § 1982 and 42 U.S.C. § 3601 et seq., violation of 42 U.S.C. § 1983 and intimidation based on race or sex in violation of 42 U.S.C. § 3617. In her proposed amendment, plaintiff eliminates her 42 U.S.C. §§ 3601 et seq. and 1983 claims and seeks to add national origin to her 42 U.S.C. § 3617 allegation and to assert claims for violation of Kansas consumer protection statutes, breach of real estate broker duties, negligent performance of voluntary undertakings, malicious prosecution, intentional infliction of emotional distress, civil conspiracy and violation of the Racketeer Influenced and Corrupt Organizations Statute ("RICO"), 18 U.S.C. §§ 1962(c) and (d).

Defendants respond that justice does not require leave to amend, since plaintiff has filed numerous complaints against them in federal and state courts. Defendants also contest whether plaintiff may join defense counsel or Wittmer and whether plaintiff's pro se status prevents her from representing her daughter as co-plaintiff.

■ The Federal Rules of Civil Procedural state that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a) (2001). Thus, motions to amend are matters of discretion for the trial court. See *Woolsey v. Marion Labs., Inc.,* 934 F.2d 1452, 1462 (10th Cir.1991). Even though the decision is ultimately discretionary, the Tenth Circuit has offered guidance by listing factors for courts to consider. In *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir.1993), the Tenth Circuit suggested that a trial court's refusal to grant leave to amend should normally be justified on such factors as futility of the amendment, a showing of undue delay, undue prejudice to the non-moving party or bad faith of the moving party. See *Phelps v. Hamilton,* 166 F.R.D. 489, 490 (D.Kan.1996).

Defendants contend that plaintiff's amendments are futile since her attempt to sue Thomas G. Lemon and his law firm is frivolous, Wittmer has no connection to this lawsuit and plaintiff's pro se status prevents her from representing her minor daughter.

The Court is hard pressed to find good reason why defense counsel should be joined in plaintiff's claims at all. As defendants argue, this Court has already dismissed for failure to state a claim an action which plaintiff filed against the same defense counsel. See Order (Doc. # 5) filed September 26, 2000 (dismissing *Zhu v. Fisher, Cavanaugh, Smith & Lemon, P.A.,*

151 F.Supp.2d 1254.) In that case, plaintiff claimed that defense counsel had violated her rights under 42 U.S.C. §§ 1982 and 1983 by discriminating against her on the basis of race, sex, national origin and familial status and engaged in threatening conduct, coercion, interference, intimidation, harassment and conspiracy in violation of the Fair Housing Act. Plaintiff did not assert the claims of negligent and fraudulent misrepresentation which are included in her amended complaint or any of the other new allegations which are set forth in her second amended complaint. Accordingly the Court must determine whether it would be futile to allow plaintiff to assert claims for negligent and fraudulent misrepresentation, violation of Kansas state consumer protection statutes, breach of real estate broker duties, negligent performance of voluntary undertakings, malicious prosecution, intentional infliction of emotional distress, civil conspiracy and RICO. The Court must also determine whether plaintiff should be allowed to re-assert against Fisher Cavanaugh and Lemon claims which the Court has previously dismissed.

■ As to the latter point, the Court cannot discern any difference between the claims which the Court has previously dismissed, and the Fair Housing Act and 42 U.S.C. § 1982 claims which plaintiff wishes to now assert.[14] The action which the Court previously dismissed arose from the state court action which Fisher Cavanaugh and Lemon filed and a letter which defense counsel wrote to plaintiff. Res judicata, or claim preclusion, precludes a party from re-litigating issues that were or could have been raised in an earlier action, if the earlier action concluded with a final judgment on the merits. See *King v. Union Oil Co.,* 117 F.3d 443, 445 (10th Cir.1997). Res judicata is an affirmative defense on

---

**14.** Plaintiff does not re-assert her Section 1983 claim in her second amended complaint.

which defendants have the burden to set forth facts sufficient to satisfy the elements. See Fed.R.Civ.P. 8(c); *Nwosun v. General Mills Rests., Inc.*, 124 F.3d 1255, 1256 (10th Cir.1997). Res judicata also operates to bar all claims arising out of the same transaction which could and should have been raised in that action. See *Schwartz v. Coastal Physician Group, Inc.*, 172 F.3d 63, 1999 WL 89037, at *3 (10th Cir. Feb. 23, 1999) (res judicata barred second action when claims arose from same transaction and sought same redress for injury). Plaintiff cannot split her claim into multiple lawsuits, she must present all of her claims arising from the same transaction in one suit. See *Myers v. Colgate Palmolive Co.*, 102 F.Supp.2d 1208, 1224 (D.Kan.2000) (ERISA suit dismissed when plaintiff had already filed ADEA/Title VII suit against employer). For the doctrine to apply, four elements must exist: (1) a judgment on the merits in the earlier action; (2) identity of the parties or privies in the two suits; (3) identity of the cause of action in both suits; and (4) a full and fair opportunity for plaintiff to litigate the claim in the first suit. *Nwosun*, 124 F.3d at 1257.

■ In this instance, the proposed parties are identical: plaintiff sued Fisher Cavanaugh and Lemon in her previous suit and proposes to sue them again on the same facts and legal theories that were present in the first adjudication. While the Court initially granted defendants' motion to dismiss as unopposed, plaintiff filed a motion for reconsideration which caused the Court to analyze her claim on the merits. The Court found that plaintiff had not stated actionable claims under 42 U.S.C. §§ 1982, 1983 or 3604(b). Plaintiff does not assert any new facts that occurred since the Court's dismissal of *Zhu v. Fisher, Cavanaugh, Smith & Lemon P.A.*, 151 F.Supp.2d 1254, therefore res judicata precludes plaintiff from suing Fisher Cavanaugh and Lemon under 42 U.S.C. §§ 1982 and 1983 and the Fair Housing Act for the same facts and occurrences as in the earlier suit.

As to the new allegations in her second amended complaint, plaintiff asserts that defense counsel are liable because they conspired with defendants, acted as facilitating counsel, retaliated against plaintiff and subjected her to malicious prosecution. Plaintiff does not allege that defense counsel conspired with Bunting to make the negligent or fraudulent misrepresentations purportedly made in connection with the purchase of her home. She does not allege that counsel conspired with defendants to defraud her, since her fraud claim is apparently based upon actions which Bunting took before he retained counsel. Plaintiff appears to claim that defense counsel's liability stems from their representation of Bunting in plaintiff's HUD proceeding and state court actions. Specifically, plaintiff alleges that in May of 2000, defendants and their counsel conspired to retaliate against her by filing a defamatory state court action for a permanent restraining order.

■ Plaintiff's proposed amendment does not rely on new factual allegations or transactions between the parties; she merely seeks to advance new legal theories by way of a second lawsuit. "New legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2nd Cir. 1985); see *Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 634 (9th Cir.1990). For the above reasons, it appears that principles of res judicata would prevent plaintiff from asserting against defense counsel any of the claims set forth in her proposed second amended complaint. Defendants have not squarely addressed this issue in opposing plaintiff's motion to join additional parties, but the defense appears to be one which they could assert if plaintiff were granted

leave to join them. The Court therefore orders plaintiff to show cause in writing on or before June 15, 2001 why its dismissal of Zhu v. Fisher Cavanaugh, 151 F.Supp.2d 1254, should not bar her from suing the law firm and defense counsel in this action.[15] The Court has already ruled against plaintiff on her attempt to sue counsel under the Fair Housing Act and 42 U.S.C. § 1982, and thus plaintiff cannot join counsel on those claims.

■■■■■ Plaintiff also seeks to join Wittmer, alleging that it precipitated the incidents in question by listing the house for sale. Defendants argue that Wittmer has no connection to this lawsuit and should not be joined. Under Fed.R.Civ.P. 20(a), joinder is appropriate when a "right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." The Court's discretion is limited by two prerequisites of the rule: a right to relief must be asserted which arises from the same transaction or occurrence, and a question of law or fact common to all the defendants must arise in the action. See *Green Constr. Co. v. Kan. Power & Light Co.*, No. 87–2070–S, 1989 WL 117440, at *1 (D.Kan. Sept. 11, 1989). The Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues. *Id.* Plaintiff asserts that all of her claims arise

from the same transaction or series of transactions, i.e. the purchase of her home, so the first prerequisite is met. In addition, plaintiff asserts the same legal allegations against all parties, so the second factor is also met. Joinder of Wittmer is therefore appropriate and the Court sustains that portion of plaintiff's motion.

■■■ Defendants also argue that plaintiff's attempt to amend is futile since pro se litigants may not represent other parties. Plaintiff responds that under 28 U.S.C. § 1654, she and her daughter may plead and conduct their cases personally and Fed.R.Civ.P. 17(c) allows an infant's legal guardian or representative to bring suit on his or her behalf. Under 28 U.S.C. § 1654, "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." This statute allows litigants to proceed either pro se or through counsel, not in any other manner. The statute does not permit pro se litigants to represent other parties, even their own children. See *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir.1986) (pro se litigant had right to appear in propria persona, but did not have the right to represent his daughters). The Tenth Circuit has specifically held that "under Fed.R.Civ.P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an

---

**15.** Even if plaintiff's new claims against defense counsel were not barred by the rule against claim-splitting, it is highly unlikely that she would prevail on her claims of malicious prosecution. Defense counsel has apparently instigated one suit against plaintiff-which plaintiff lost. Plaintiff would have a difficult time on a malicious prosecution claim based on that suit since, in order to win a malicious prosecution suit under Kansas law, plaintiff must show that the earlier proceedings terminated in her favor. See *Berg-*

*strom v. Noah*, 266 Kan. 829, 837, 974 P.2d 520, 526 (1999). Plaintiff also contends that defendants improperly conspired with defense counsel in opposing the two lawsuits which she has filed. This conduct will not support a malicious prosecution claim since "[n]o Kansas court has ever held that a malicious prosecution action lies against a party who defends against or appeals a claim initiated by a plaintiff." *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 205, 4 P.3d 1149, 1157 (2000).

attorney." *Id.* In addressing this issue, another court in this district has remarked:

It goes without saying that it is not in the interests of minors and incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected. There is nothing in the guardian-minor relationship that suggests that the minor's interests would be furthered by representation by the non-attorney guardian.

*Oltremari by McDaniel v. Kan. Soc. & Rehabil. Serv.,* 871 F.Supp. 1331, 1362 (D.Kan.1994). Plaintiff's attempt to represent her minor daughter in her proposed second amended complaint is therefore futile. The Court denies plaintiff's motion for leave to amend to add her daughter as a plaintiff.

Defendants do not argue that plaintiff's proposed claims against Bunting Appraisal Services, or her proposed additional legal claims, are futile. Nor do they argue that plaintiff has unduly delayed her motion to amend. Although defendants clearly believe that plaintiff's lawsuit is vexatious and even frivolous, they do not claim that she brings her motion to amend in bad faith. Defendants do argue that amendment would be prejudicial.

 Absent a specific finding of flagrant abuse, bad faith or futility, the determining factor in evaluating a motion to amend should be prejudice to the opposing party. See *Little v. Reed Prentice Div. of Package Mach.,* 131 F.R.D. 591, 593 (D.Kan.1990). The party opposing amendment has the burden to show some specific

way in which it will be prejudiced. *Id.* The court in Little noted as possible forms of prejudice the injection of a host of new issues or theories requiring substantial additional evidence. *Id.* at 594. Though plaintiff has made several attempts to file an amended complaint, she has been successful only once. See Order (Doc. # 19 in Case No. 00–2290) filed November 14, 2000 (granting plaintiff leave to amend). Other than stating that plaintiff's frequent filings make it difficult to keep the issues straight, defendants do not specifically state how amendment of plaintiff's complaint will prejudice them. The Court recognizes that plaintiff's proposed amendment will add new legal claims to this case. Generally, however, these new claims do not involve new factual allegations that would prolong discovery or substantially prejudice defendants.

In light of the latitude given plaintiff due to her pro se status, the Court sustains in part her motion to amend.[16] Plaintiff may file the proposed second amended complaint which is attached to her motion to amend, except that she may not add her daughter as a plaintiff. Also, at this time she may not assert claims against Fisher Cavanaugh and Thomas G. Lemon.

## IV. Motion To Consolidate (Doc. # 67)

Plaintiff seeks to consolidate state and federal court actions between the parties, arguing that they involve common questions of fact and law and that this Court has final jurisdiction over the Kansas state court system.

As noted before, Kansas state courts presided over one action in which Bunting sought a restraining order against plaintiff and two in which plaintiff sought a re-

---

16. The Court gives plaintiff as a pro se party great latitude in allowing her to introduce new legal claims at a relatively late date in the litigation. Plaintiff should note that since the Court has now allowed her to amend once as a matter of course and once permissively, it will be very reluctant to grant leave to make further changes to the claims and parties involved in this action.

straining order against Bunting and defense counsel. Plaintiff lost all three cases. The Kansas Court of Appeals affirmed the dismissal of one of plaintiff's cases and dismissed plaintiff's appeals in the other two cases.[17] Plaintiff asks this Court to revive all three cases and order their transfer to this Court so that they might be consolidated with her federal suits.

 Other than Fed.R.Civ.P. 42(a), plaintiff cites no legal authority for her request. Under Rule 42(a), plaintiff may consolidate all actions pending before a single court which involve a common question of law or fact. Defendants argue that this Court cannot consolidate the state court actions since they are not pending before it. As defendants note, Rule 42(a) does not provide for the consolidation of state appellate court cases and federal district court cases. Plaintiff does not cite any authority that would allow the Court to sustain her motion.[18] Accordingly, plaintiff's motion to consolidate is overruled.[19]

## V. Discovery Disputes (Docs. # 42, 50 and 89)

Plaintiff asks the Court to strike defendants' interrogatories because they origi-nally numbered 28 instead of 25, as allowed by the Court's scheduling order and Fed.R.Civ.P. 33(a). See Response To Defendants' Notice Of Discovery (Doc. # 50) filed January 6, 2001. Defendants filed amended interrogatories to comply with the local rules, but plaintiff still insists that the amended interrogatories be stricken. Plaintiff also states that she should not have to answer them within the 30 days allotted by Fed.R.Civ.P. 33(b)(3), and that if defendants do not answer her interrogatories within 30 days she will file a motion to compel. No further motions have been filed on this issue, and plaintiff's objection is therefore apparently moot. The Court therefore overrules plaintiff's request to strike defendants' interrogatories or to extend time to respond. Plaintiff has also filed an unopposed Motion For Leave To File Witness List and Exhibit List One Day Out Of Time (Doc. # 42), which the Court sustains. Plaintiff's Motion For Reconsideration (Doc. # 89) filed February 7, 2001 is overruled as moot.[20]

## VI. Motion For Determination Of Place Of Trial (Doc. # 108)

Plaintiff originally requested that trial be held in Kansas City, Kansas. See Complaint (Doc. # 1) filed June 29, 2000. De-

---

17. See note 4.

18. Plaintiff states that Attorney General John Ashcroft testified at his confirmation hearing that a federal court judge sits in judgment in a setting where the ruling of a single judge can displace the conclusions of the entire Missouri Supreme Court. Attorney General Ashcroft's purported views on the power of the federal judiciary, however, do not create new rights for litigants which conflict with the Federal Rules of Civil Procedure.

19. Furthermore, as indicated in note 4, the Kansas Court of Appeals has affirmed on appeal the denial of plaintiff's request for a permanent restraining order from Lemon and dismissed plaintiff's appeals in the other two

cases. The record contains no suggestion that plaintiff has sought review in the Kansas Supreme Court, and it does not appear that the cases are now pending in any court.

20. Plaintiff filed her motion for reconsideration (Doc. # 89) on February 7, 2001, before both this Court and the Magistrate Judge. In the motion she asked the Court to reconsider the Magistrate Judge's order (Doc. # 94) filed February 4, 2001, which denied plaintiff's demands that her deposition be taken under specific circumstances and that she be paid for her time. The Magistrate Judge overruled plaintiff's request for reconsideration, see Order (Doc. # 90) filed February 7, 2001 and in the meantime plaintiff's deposition has been taken. Plaintiff's motion is therefore moot.

fendants ask the Court to designate Topeka, Kansas as the record office and trial location since no good justification exists for hearing the matter in Kansas City, Kansas. See Motion For Determination Of Place Of Trial (Doc. # 108) filed April 3, 2001.

■ Under D. Kan. Rule 40.2, the Court is not "bound by the requests for place of trial but may, upon motion by a party, or in its discretion determine the place of trial." In considering motions for intra-district transfer, the courts of this district have generally looked to the factors relevant to change of venue motions under 28 U.S.C. § 1404(a).[21] See *Hartwick v. Lodge 70 Int'l,* No. 99–4139–SAC, 2000 WL 970670, at *1 (D.Kan. June 16, 2000) (citing *Aramburu v. Boeing Co.,* 896 F.Supp. 1063, 1064 (D.Kan.1995); *Curtis 1000, Inc. v. Pierce,* No. 94–4086 RDR, 1994 WL 478744, at *1 (D.Kan. Aug. 25, 1994)). In evaluating a transfer under Section 1404(a), the Court considers plaintiff's choice of forum, the convenience for witnesses, the accessibility of witnesses and other sources of proof, the relative advantages and obstacles to a fair trial, and "all other consideration of a practical nature that make a trial easy, expeditious and economical." *Hartwick,* 2000 WL 970670, at *1 (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1515–16 (10th Cir.1991)). "Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Id.* (citing *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992) (quotations and citations omitted)).

Defendants argue that trial should be in Topeka because most if not all of the principal witnesses are in Topeka, defendants and plaintiff reside in Topeka, and the transactions and incidents which give rise to this lawsuit occurred in Topeka.[22] Plaintiff responds that she has the right to choose the place of trial "as compensation for the fact that [she] must bear the burden of proof," that defense counsel practice in Kansas City so this location is not inconvenient for them, that Topeka is inconvenient for plaintiff since certain key witnesses reside in Kansas City or out of state, and that transfer is not in the interest of justice.[23] Plaintiff suggests that she would be amenable to transfer if the court and jury in Topeka agree in writing to shift the burden of persuasion to defendants, i.e. plaintiff will win her suit if defendants do not prove that they did not harm her.

■ Fortunately, the Court need not redistribute the burden of proof to resolve this issue. In light of the short distance between Kansas City and Topeka and plaintiff's preference for Kansas City, defendants' hardship in litigating in Kansas City is relatively insignificant. Many attorneys and judges, including judges in this Court, commute between Topeka and Kansas City on a daily basis. The administrative difficulties and potential delay that would be created by transfer are con-

21. Under 28 U.S.C. § 1404, "in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court recognizes that the statute is inapplicable on its face as Kansas constitutes only one judicial district and division. The statute provides, however, that "[a] district court may order any civil action to be tried at any place within the division in which it is pending." 28 U.S.C. § 1404(c).

22. Defendants assert that "[i]t would be inherently unequitable for Kansas City to be the place of trial for what is essentially a Topeka conflict with Topeka parties and Topeka witnesses." Memorandum Of Law In Support Of Motion For Determination Of Place Of Trial (Doc. # 109) at 4.

23. Plaintiff occasionally makes reference to "plaintiffs" in her response to defendants' motion. This case has only one plaintiff of record, Xiangyuan (Sue) Zhu.

siderable. The Court therefore overrules defendants' motion to transfer.

## VII. Defendants' Motion To Strike Plaintiff's Amended Complaint Or To Dismiss (Doc. # 27)

On December 7, 2000, defendants filed a Motion To Strike Plaintiff's Amended Complaint Or In The Alternative, Motion To Dismiss (Doc. # 27). In light of the fact that the Court has granted plaintiff's motion to amend, defendant's motion to strike plaintiff's amended complaint is partially moot. To the extent that plaintiff's second amended complaint omits claims which were included in the amended complaint, defendants' motion is also partially moot.[24] The second amended complaint does re-assert plaintiff's claims for fraudulent and negligent misrepresentation, however, and her claims for relief under 42 U.S.C. §§ 1982 and 3617. To that extent defendants' motion to strike or dismiss is not moot and the Court will address it below.

## A. Plaintiff's Motion To Strike (Doc. # 29)

As a preliminary matter, plaintiff argues that defendants' motion to strike or dismiss is untimely since she filed her amended petition on October 30, 2000. Motion To Strike (Doc. # 29) filed December 11, 2000. Plaintiff is apparently confused, however, because on that date she filed her motion for leave to amend. The Court did not grant leave until November 14, 2000. Under D. Kan. Rule 15.1, plaintiff was required to serve her amended complaint within 10 days after leave was granted, and to also file a separate certificate of service. Defendants state that plaintiff never served her amended petition, and the docket sheet does not reveal a separate certificate of service. While Fed.R.Civ.P. 12(f) provides that a motion to strike may be made within 20 days after service, this time has not begun to run because plaintiff did not effectuate service. Defendants' motion to dismiss is therefore timely and plaintiff's motion to strike is overruled.

## B. Defendants' Motion To Dismiss

As noted above, the second amended complaint replicates plaintiff's claims for fraudulent or negligent misrepresentation and violations of 42 U.S.C. §§ 1982 and 3617. Defendants allege that these allegations are insufficient under Fed.R.Civ.P. 12(b)(6) because (1) plaintiff's FHA claim does not allege that she has been denied the opportunity to rent property, that she was exercising any rights protected by the FHA, or that defendants discriminated against her on the basis of sex or race; and (2) fraud is not alleged with particularity. Plaintiff responds that factual disputes make dismissal inappropriate.

In ruling on a motion to dismiss, the Court must assume as true all well pleaded facts in plaintiff's complaint and view them in a light most favorable to plaintiff. See *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The Court affords a pro se plaintiff more leniency, and must liberally construe the complaint. See *Oltremari,* 871 F.Supp. at 1333. The Court may not assume the role of advocate, however, for a pro se litigant. See

---

**24.** Plaintiff's fraudulent or negligent misrepresentation claims (Count I in her amended complaint) appear as Count II(A) in her second amended complaint. Plaintiff's claims under 42 U.S.C. §§ 1982 and 3617 (Count IV in her amended complaint) appear as Count I in her second amended complaint. The second amended complaint omits plaintiff's claims under 42 U.S.C. §§ 3601 and 3604 through 3606 (Count I of the amended complaint) and 42 U.S.C. § 1983 (Count III of the amended complaint).

*Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). Although plaintiff need not precisely state each element of her claims, she must plead minimal factual allegations on those material elements that must be proven. See *id.*

The issue in reviewing the sufficiency of plaintiff's complaint is not whether she will prevail, but whether she is entitled to offer evidence to support her claims. See *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of her theory of recovery that would entitle her to relief. See *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir.1991).

In addressing these issues, the Court notes that plaintiff does not consistently indicate which defendants she sues under her various theories of liability. Due to plaintiff's pro se status and because defendants' motion to dismiss does not raise any arguments which pertain to fewer than all defendants, the Court liberally interprets the amended complaint and assumes that plaintiff intends to sue each defendant on all counts.[25]

## 1. Fraudulent And Negligent Representation [26]

Plaintiff's amended complaint and second amended complaint allege common law fraud and negligent misrepresentation. Defendants contend that plaintiff's claims do not satisfy Fed.R.Civ.P. 9(b), which requires that "circumstances constituting

fraud or mistake shall be stated with particularity."

Under Kansas law, a plaintiff in a fraud case must prove by clear and convincing evidence five elements: (1) an untrue statement of fact, (2) known to be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the truth, (3) justifiable reliance on the statement to plaintiff's detriment, (4) acts to plaintiff's injury, and (5) damage. See *Hall v. Doering,* 997 F.Supp. 1464, 1473 (D.Kan.1998) (citing *Albers v. Nelson,* 248 Kan. 575, 579, 809 P.2d 1194, 1198 (1991); *Tetuan v. A.H. Robins Co.,* 241 Kan. 441, 465–67, 738 P.2d 1210, 1228–30 (1987); *Moore v. State Bank of Burden,* 240 Kan. 382, 389, 729 P.2d 1205, 1211 (1986); *Nordstrom v. Miller,* 227 Kan. 59, 65, 605 P.2d 545, 551–52 (1980)). Stated otherwise, to make an actionable case for fraud, plaintiff must plead and prove misrepresentations of fact known by defendants to be untrue or made with reckless disregard for the truth, and plaintiff must have reasonably relied upon the misrepresentations to her detriment. *Id.* (citing *Tetuan,* 738 P.2d at 1230). Negligent misrepresentation is a "lesser included" claim; it differs from fraudulent misrepresentation only in that the latter requires knowledge that the statement was false, while the former merely requires that the person who made the statement failed to exercise reasonable care or competence to obtain or communicate true information. See *Eckholt v. Am. Bus. Info.,* 873 F.Supp. 510, 517 (D.Kan.1994) (citing *Mahler v. Keenan Real Estate, Inc.,* 255 Kan. 593, 604, 876 P.2d 609, 616 (Kan.1994); *Raymark Indus., Inc. v.*

---

**25.** As discussed above, however, plaintiff has not been allowed to amend her complaint to assert claims against Fisher Cavanaugh or Thomas G. Lemon.

**26.** Plaintiff's claims for fraudulent and negligent misrepresentation appear in Count I of her amended complaint and Count II(A) of her second amended complaint.

*Stemple*, 714 F.Supp. 460, 468 (D.Kan. 1988)).

For purposes of a motion to dismiss, the Court assumes the truth of plaintiff's allegations and asks only if it appears beyond a reasonable doubt that she can prove no set of facts which might entitle her to relief. Plaintiff's second amended complaint alleges that defendants made false statements of fact when Bunting told her that under the contract she was legally obligated to buy the property from him, and that he would complete certain repairs after plaintiff moved into the home.[27] In addition, defendants allegedly omitted or concealed material facts regarding the home. Plaintiff contends that defendants intended to deceive her with these statements and omissions and induce her to rely on them. Plaintiff asserts that she purchased the home because she reasonably relied on the fact that Bunting and Thomas vowed to sue her if she did not do so, and because Bunting promised to repair the house. Finally, plaintiff alleges that she has been damaged as a result of defendants' fraud.

While defendants claim that plaintiff has not alleged fraud with particularity, plaintiff's amended complaint pleads each element of the action, and her second amended complaint adds nothing which would change the outcome. In light of plaintiff's pro se status, the Court cannot say that plaintiff will not be able to prove any set of facts that would entitle her to relief for fraudulent and negligent misrepresentation. Defendants' motion to dismiss plaintiff's misrepresentation claim is overruled.

### 2. Violation Of 42 U.S.C. §§ 1982 And 3617

Plaintiff asserts that defendants subjected her to intentional infliction of emotional distress due to her national origin, race and sex in violation of 42 U.S.C. §§ 1982 and 3617.[28]

---

**27.** Plaintiff asserts that in fact, the contract obligated her to buy the property if an inspection report revealed that the needed repairs did not exceed one per cent of the purchase price of the property, $113,000.00. Amended Complaint (Doc. # 101) at ¶ 6. The inspection report revealed that the home required $2,105.00 worth of repairs, so plaintiff argues that the contract did not obligate her to buy the home. Id. at ¶ 7.

**28.** Count IV of plaintiff's amended complaint and Count I of plaintiff's second amended complaint allege violations of 42 U.S.C. §§ 1982 and 3617 and Section 818 of the Fair Housing Act Amendments of 1988. When Congress amended the Fair Housing Act in 1988, it redesignated Section 818 of the Fair Housing Act as 42 U.S.C. § 3617. See Fair Housing Act Amendments of 1988, Pub.L. No. 100–430, 102 Stat. 1619 (1988). Therefore the Court analyzes her claim under 42 U.S.C. § 3617. Also, plaintiff's second amended complaint apparently adds an allegation of discrimination based on national origin to her claims under 42 U.S.C. §§ 1982 and 3617 (Count I). Count I of plaintiff's second amended complaint mentions national origin and sex, but omits a direct reference to race. In light of plaintiff's allegation that Section 1982 provides rights equal to those of white citizens, and the introduction of plaintiff's second amended complaint, which states that this action is brought to redress race and sex discrimination, it appears that plaintiff has not abandoned this claim. The line between race and national origin discrimination claims is often not a bright one, particularly in a case such as this when the protected racial class is Asian and the protected national origin is Chinese. Cf. *Shinwari v. Raytheon Aircraft Co.*, 25 F.Supp.2d 1206, 1210 (D.Kan. 1998) (race claim abandoned when plaintiff mentioned only national origin and age in pretrial order). Plaintiff does not distinguish between Section 1982 and Section 3617 when alleging discrimination on the basis of national origin, race and sex. Since Section 1982 only addresses racial discrimination, the Court presumes that plaintiff means to allege racial discrimination under Section 1982 and national origin, race and sex discrimination under Section 3617.

### a. 42 U.S.C. § 1982 [29]

Plaintiff asserts that she has suffered severe emotional distress since defendants intentionally violated her rights because of her race in violation of Section 1982. Defendants respond that plaintiff does not state a claim because they did not deny her housing and she currently resides in the property in question.

■ Under 42 U.S.C. § 1982, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Congress enacted Section 1982 to enforce the Thirteenth Amendment and to prohibit all racial discrimination, private and public, in the sale and rental of property. See *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir .1996) (citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968)). To state a prima facie case plaintiff must allege that (1) she is a member of a racial minority; (2) defendants denied her rights or benefits connected with the ownership of property; and (3) defendants would not have denied these rights and benefits in the absence of racial discrimination. See *Reeves v. Carrollsburg Condominium Unit Owners Ass'n*, No. 96–2495RMU,

1997 WL 1877201, at *8 (D.D.C. Dec. 18, 1997) (defendants violated Section 1982 by not enforcing rules violations regarding racial harassment in way other rules were enforced). Plaintiff may bring a cause of action under this statute even if she is in possession of the property.[30]

■ Plaintiff alleges that she is Asian and she therefore satisfies the first element. Plaintiff asserts that defendants discriminated against her rights as a property owner when they intentionally breached their contractual duties under the real estate contract, i.e. they agreed to make home repairs but then refused to do so, on account of national origin, racial and sexual discrimination. At this stage, the question is not whether plaintiff will prevail but whether she can state a claim. By alleging these facts, plaintiff's complaint survives a motion to dismiss. Defendants' motion to dismiss plaintiff's housing discrimination claim under 42 U.S.C. § 1982 is therefore overruled.

### b. 42 U.S.C. § 3617

Plaintiff claims that defendants intentionally inflicted emotional distress on her when they violated 42 U.S.C. § 3617 on account of her national origin, race and sex. Under Section 3617, "[i]t shall be unlawful to coerce, intimidate, threaten, or

**29.** Plaintiff's claim under 42 U.S.C. § 1982 appears in Count IV of her amended complaint and Count I of her second amended complaint.

**30.** Defendants cite *Asbury v. Brougham*, 866 F.2d 1276, 1279–80 (10th Cir.1989), for the proposition that under Tenth Circuit precedent plaintiff must be denied housing in order to state a claim under Section 1982. Plaintiff cannot state a claim under this statute, defendants assert, since she lives in the property in question. This interpretation of Asbury is not correct. In Asbury, the Tenth Circuit tied the test to the problem at hand, i.e. the fact that defendant had denied plaintiff housing due to racial discrimination. In order to prevail,

plaintiff logically needed to prove the denial of housing. Defendants' test would only allow a claim when plaintiff is denied housing, and this would rule out claims for relief from discrimination in holding or conveying property and such actions as cross-burning and fire-bombing. See *Johnson v. Smith*, 810 F.Supp. 235, 237 (N.D.Ill.1992) (cross burning in yard of minority homeowners violated Act); *Stirgus v. Benoit*, 720 F.Supp. 119, 121 (N.D.Ill.1989) (firebombing minority's home stated claim under Act). To exclude remedies for these actions would clearly violate the purpose and language of the statute. Plaintiff's possession of the property does not automatically bar a claim of racial discrimination under the Act.

interfere with any person in the exercise of enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of any right granted of protected by section 3603, 3604, 3605, 3606 of this title." Defendants argue that plaintiff does not allege (1) that she exercised or enjoyed a protected right or aided or encouraged others in the exercise or enjoyment of any protected rights; (2) that defendants intentionally discriminated against her because she is a member of a protected class; (3) that defendants committed any specific acts of discrimination or deprivation of rights; or (4) that defendants' acts rose to the level of coercion, intimidation, threats or interference.

 In order to state a claim under Section 3617, plaintiff's complaint must allege the following: (1) plaintiff is a member of a protected class under the Fair Housing Act; (2) plaintiff exercised or enjoyed a right protected by Sections 3603 through 3606, or aided or encouraged others in exercising or enjoying such rights; (3) intentional discrimination at least partially motivated defendants' conduct; and (4) defendants' conduct constituted coercion, intimidation, threat, or interference on account of having exercised, or aided or encouraged others in exercising, a right protected under Sections 3603 through 3606. See *United States v. Sea Winds of Marco, Inc.,* 893 F.Supp. 1051, 1055 (M.D.Fla.1995) (citing *People Helpers Found. v. City of Richmond,* 781 F.Supp. 1132 (E.D.Va.1992); *Cass v. Am. Props., Inc.,* No. 94 C 2977, 1995 WL 132166 (N.D.Ill. Feb. 27, 1995)). A violation of Section 3617 may be plead even absent other violations of the Fair Housing Act. See *Stackhouse v. DeSitter,* 620 F.Supp. 208, 210 (N.D.Ill.1985) (requiring violation of other sections of FHA to state claim under Section 3617 would render Section 3617 superfluous).

 Due to her national origin, race and sex, plaintiff is a member of a protected class under the FHA. Plaintiff contends that the rights at issue are her right to possess and enjoy her home and her right to repairs under her contract with defendants. According to the amended complaint, defendants intentionally discriminated against plaintiff based on national origin, race and sex. Plaintiff argues that defendants intimidated or interfered with her rights in violation of Section 3617 in several respects: (1) defendants retained keys to her residence and Bunting went into her home without permission to force plaintiff to have sex with him, thus interfering with plaintiff's right to enjoy her property; (2) Robert Thomas intimidated and coerced her when he told her to leave the offices of Countrywide and threatened to sue her and have her arrested and fired when she attempted to enforce her rights to have the repairs completed; (3) Candace Thomas threatened, intimidated and coerced her from exercising rights under the FHA; and (4) Bunting sexually assaulted her to deter her from exercising her right to enforce the terms and conditions of her housing agreement. Under the liberal standard of a motion to dismiss, the Court finds that plaintiff has stated a claim under Section 3617. See *Grieger v. Sheets,* 689 F.Supp. 835, 840–41 (N.D.Ill. 1988) (claim stated when landlord sexually harassed plaintiff and offered to trade repairs for sex).

**IT IS THEREFORE ORDERED** that plaintiff's Motion To Strike (Doc. # 29) filed December 11, 2000 be and hereby is **OVERRULED.**

**IT IS HEREBY FURTHER ORDERED** that defendants' Motion To Dismiss (Doc. # 4) filed on July 20, 2000 be and hereby is **OVERRULED** as moot with regard to plaintiff's allegations of race and sex discrimination in violation of 42 U.S.C.

§§ 3601 and 3604 through 3606 (Count II) and plaintiff's allegations under 42 U.S.C. § 1983 (Count III) which do not appear in the second amended complaint which the Court grants plaintiff leave to file. Defendants' motion is **OVERRULED** with respect to plaintiff's claims of race discrimination in violation of 42 U.S.C. § 1982 and national origin, race and sex discrimination in violation of 42 U.S.C. § 3617 (Count IV of the amended complaint) and fraudulent and negligent misrepresentation (Count I of the amended complaint) because plaintiff states the prima facie case in her Section 1982 and Fair Housing Act claims and she also alleges fraudulent and negligent misrepresentation with sufficient particularity. Plaintiff may re-allege these claims in the manner set forth in Counts I and II(A) of her proposed second amended complaint.

IT IS HEREBY FURTHER ORDERED that plaintiff's Motion To Withdraw Plaintiff's Motion To Disqualify For Making Amendments (Doc. # 31) filed on December 11, 2000 be and hereby is **SUSTAINED.**

IT IS HEREBY FURTHER ORDERED that plaintiff's Motion To Disqualify (Doc. # 18) filed November 13, 2000 be and hereby is **OVERRULED** as moot.

IT IS HEREBY FURTHER ORDERED that defendants' Motion For Leave To File Response To Plaintiff's Motion For Leave To Join Additional Parties In Her Amended Petition Out Of Time (Doc. # 40) filed December 19, 2000 be and hereby is **SUSTAINED.** The Clerk of the Court is ordered to file defendants' Response To Plaintiff's Motion For Leave To Join Additional Parties In Her Amended Petition filed December 19, 2000 which is attached to Doc. # 41.

IT IS HEREBY FURTHER ORDERED that plaintiff's Motion For Reconsideration (Doc. # 89) filed February 7, 2001 be and hereby is **OVERRULED** as moot.

IT IS HEREBY FURTHER ORDERED that plaintiff's Motion To Strike The Defendants' Motion To File Response To Plaintiff's Motion For Leave To Join Additional Parties In Her Amended Petition Out Of Time And The Defendants' Response To Plaintiff's Motion For Leave To Join Additional Parties In Her Amended Petition (Doc. # 45) filed December 22, 2000 be and hereby is **OVERRULED.**

IT IS HEREBY FURTHER ORDERED that plaintiff's Motion For Leave To Join Additional Parties In Her Amend[ed] Petition (Doc. # 22) and plaintiff's Motion For Amended And Supplemental Pleadings (Doc. # 99) filed March 13, 2001 be and hereby are **SUSTAINED** in part and **OVERRULED** in part, as follows: (1) plaintiff is allowed to join Bunting Appraisal Services and Wittmer Farm Realty Company, Inc. as party defendants and (2) except for the claims on behalf of Ye Zhu and claims of Fair Housing Act and 42 U.S.C. § 1982 violations against Thomas G. Lemon and Fisher, Cavanaugh, Smith & Lemon P.A., plaintiff is granted leave to file the second amended complaint which is attached to plaintiff's motion for leave to amend. Plaintiff shall conform her proposed pleading to this order, and shall file and serve it no later than June 15, 2001. Plaintiff shall also show cause in writing on or before June 15, 2001 why the Court's order in *Zhu v. Fisher Cavanaugh,* Case No. 01–2067, should not bar all claims against Fisher, Cavanaugh, Smith & Lemon P.A. and Thomas G. Lemon. In all other respects, plaintiff's motions for leave to join additional parties and to amend and supplement her pleadings are **OVERRULED.**

IT IS HEREBY FURTHER ORDERED that defendant's Objection To Plaintiff's Supplement To Motion For

Leave To Join Additional Parties In The Plaintiff's Amend [Sic] Petition (Doc. # 53) filed January 10, 2001 and Defendants' Second Objection To Plaintiff's Supplement To The Petition (Doc. # 61) filed January 16, 2000 be and hereby are **SUSTAINED.** The Clerk of the Court is ordered to strike plaintiff's Supplement To Motion For Leave To Join Additional Parties In the Plaintiff's Amend[ed] Petition (Doc. # 48) filed January 2, 2001 and plaintiff's Amended Complaint (Doc. # 57) filed January 11, 2001.

**IT IS HEREBY FURTHER ORDERED** that plaintiff's Motion To Consolidate (Doc. # 67) filed January 21, 2001 be and hereby is **OVERRULED.**

**IT IS HEREBY FURTHER ORDERED** that plaintiff's Response To Defendants' Notice Of Discovery (Doc. # 50) filed January 6, 2001 be and hereby is **OVERRULED.**

**IT IS HEREBY FURTHER ORDERED** that plaintiff's unopposed Motion For Leave To File Witness and Exhibit List One Day Out Of Time (Doc. # 42) filed December 16, 2000 be and hereby is **SUSTAINED .**

**IT IS HEREBY FURTHER ORDERED** that defendants' Motion For Determination Of Place Of Trial (Doc. # 108) filed April 3, 2001 be and hereby is **OVERRULED.** Trial will be held in Kansas City, Kansas.